590 So.2d 404 (1991)
Kenneth D. SCHMITT, Petitioner,
v.
STATE of Florida, Respondent.
No. 76317.
Supreme Court of Florida.
November 14, 1991.
*407 Richard L. Jorandby, Public Defender and Cherry Grant, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Joan Fowler, Senior Asst. Atty. Gen. and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for respondent.
*408 PER CURIAM.
We have for review Schmitt v. State, 563 So.2d 1095 (Fla. 4th DCA 1990), which expressly declared valid subsections 827.071(1)(g) and 827.071(5), Florida Statutes (1987). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

I. Facts
In January 1988, the Martin County Sheriff's Office received information that Kenneth D. Schmitt was taking nude photographs of his twelve-year-old daughter. Deputies conducted an interview with the child, and based on that interview, a deputy applied for a warrant to search Schmitt's house. In their entirety, the factual allegations in the probable-cause affidavit state:
On this date, 1-7-88, your affiant interviewed juvenile Rachel Christine Schmitt, 4-6-75, of 300 E. Salerno Rd., Pt. Salerno, Fl. The interview revealed that the juvenile resides at the premises to be searched, along with her brother and father. She has lived at this residence for the past eight years. The juvenile revealed to your affiant that in 1983 her father, Kenneth Schmitt, had taken numerous nude photographs of her in various poses. These photo sessions started in 1983 and continued through 1987, the last photo session being shortly after Christmas. The juvenile was eight years of age when these photo sessions commenced. The juvenile victim revealed to your affiant that her father had a nude adult white female pose for nude photographs in her presence. The juvenile victim also stated that she has taken nude photographs of her father numerous times.
In December 1987, the father obtained a VHS video recording system. During this time, December 1987, the father utilized the camera to record the juvenile victim and a white female friend disrobe, or as the juvenile described it, stripping down to their panties. The juvenile victim also stated that she has reviewed this same video recording on the premises to be searched. During the same time frame, December 1987, the father utilized the same VHS camera to record the juvenile victim swimming in the nude.
Since 1983 the juvenile victim stated that the father has kept the photographs, films, cameras, VHS recording system, TV, and VCR at different locations inside the premises to be searched.
The above offenses did occur within the county of Martin, Martin County, Florida [sic].
The affidavit then alleged that these facts established probable cause for violations of four statutes. Two of those alleged violations are relevant to this opinion.
First, the affidavit alleged violation of section 827.071, prohibiting sexual performance by a child. In pertinent part, this statute prohibits the knowing possession of any depiction known to include "sexual conduct" by a child.[1] § 827.071(5), Fla. Stat. (1987). "Sexual conduct" is expressly defined as
actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.
§ 827.071(1)(g), Fla. Stat. (1987).
Second, the affidavit alleged violation of section 800.04, prohibiting lewd assaults or acts upon or in the presence of a child. In pertinent part, this statute outlaws the act of knowingly committing "any lewd or lascivious act in the presence of any child under the age of 16 years without committing the crime of sexual battery." § 800.04(3), Fla. Stat. (1987).
Based on the affidavit, a warrant was issued and Schmitt's house was searched. During the search, deputies discovered videotapes and related material that later formed the basis of the state's case against Schmitt. Reserving the right to appeal, *409 Schmitt pled no contest to several of the charges, including violation of subsection 827.071(5).[2]
On appeal, the Fourth District rejected Schmitt's argument that officers lacked probable cause to obtain the warrant. Although the Fourth District determined that subsection 827.071(1)(g) was overbroad on its face, the court adopted a narrowing construction by reading a lewdness element into the applicable portions of the statute.[3] On this basis, the court below upheld the constitutionality of the statute. Schmitt, 563 So.2d at 1098-1100.
In this review, Schmitt argues first that the affidavit quoted above was facially insufficient to support a finding of probable cause. Second, he argues that his conviction under subsection 827.071(5), Florida Statutes (1987), is unlawful because that statute is unconstitutional. We disagree with both arguments.

II. Florida Law on Probable Cause
As a legal concept, "probable cause" is not capable of a bright-line test. Rather, it involves a fact-intensive analysis that necessarily varies from context to context. In particular, the courts are required to weigh two interests that usually are in conflict: society's recognition that its police forces should be given discretion to investigate any reasonable probability that a crime has occurred, and the individual's interest in not being subjected to groundless intrusions upon privacy.
In the past, we have defined "probable cause" as a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged. Dunnavant v. State, 46 So.2d 871 (Fla. 1950). The reasons cited by the police must be sufficient to create a reasonable belief that a crime has been committed. Florida East Coast Ry. Co. v. Groves, 55 Fla. 436, 46 So. 294 (1908). As long as the neutral magistrate has a substantial basis for concluding that a search would uncover evidence of wrongdoing, the requirement of probable cause is satisfied. Polk v. Williams, 565 So.2d 1387 (Fla. 5th DCA 1990). In the same vein, the United States Supreme Court has noted:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed.

Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (emphasis added) (quotation marks omitted).
Confining our inquiry entirely to the four corners of the affidavit, as required by law, e.g., State v. Bond, 341 So.2d 218 (Fla. 2d DCA 1976); see § 933.18, Fla. Stat. (1989); Fla.R.Crim.P. 3.190(h)(1) (1990), the next question is whether the factual allegations created a substantial basis for concluding that probable cause existed. We believe they did.

III. Probable Cause in the Present Case
We note initially that the present case requires the drawing of a very fine line. On one hand, the law is now well settled that simple non-obscene[4] nudity in photographs or films is a protected form of expression under the first amendment.[5] *410 New York v. Ferber, 458 U.S. 747, 765 n. 18, 102 S.Ct. 3348, 3359, 73 L.Ed.2d 1113 (1982); Jenkins v. Georgia, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974). Nor is it a crime in Florida for a parent simply to appear unclothed in front of a child in the family home, or a child in front of a parent, with no lewd or abusive intent. Far too many entirely innocent situations would be criminalized by a contrary determination.[6] Thus, in such matters, families and home-dwellers have a legitimate privacy interest that the law must respect.
On the other hand, the Court must be mindful that sexual exploitation of children is a particularly pernicious evil that sometimes may be concealed behind the zone of privacy that normally shields the home. The state unquestionably has a very compelling interest in preventing such conduct.
The two pertinent statutes recited in the probable cause affidavit clearly are aimed at rooting out the sexual exploitation of children. First, section 827.071 (prohibiting sexual performances by a child) requires not merely nudity but depictions or representations of actual sexual intercourse, deviate sexual acts, bestiality, masturbation, sadomasochism, "lewd" exhibition of the genitals, the touching of a person's clothed or unclothed privates or buttocks,[7] or actual or simulated sexual battery. § 827.071(1)(g), Fla. Stat. (1987). Of these requisite acts, the only relevant one is "lewd" exhibition of the genitals. We believe the affidavit did in fact create a substantial basis for the magistrate below to conclude that probable cause existed as to this particular crime.
Under Florida criminal law the terms "lewd" and "lascivious" are synonymous: Both require an intentional[8] act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others.[9]Rhodes v. State, 283 So.2d 351, 356-57 (Fla. 1973) (citing Chesebrough v. State, 255 So.2d 675, 678 (Fla. 1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972)). The terms "lewd" and "lascivious" thus mean something more than a negligent disregard of accepted standards of decency, or even an intentional but harmlessly discreet unorthodoxy. See Chesebrough, 255 So.2d at 678. Acts are neither "lewd" nor "lascivious" unless they substantially intrude upon the rights of others.
By the same token, it is evident beyond all doubt that any type of sexual *411 conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents and whether or not that conduct originates from a parent.[10] As noted earlier, society has a compelling interest in intervening to stop such misconduct. Thus, if Schmitt's true purpose was the intentional exploitation of his daughter for a sexual purpose, then his conduct was "lewd" within the meaning of Florida law and is punishable as such.
While it is conceivable that one might view the allegations in the present affidavit as depicting simple nudity, we believe the magistrate had a substantial basis for concluding otherwise. The affidavit's factual allegations indicated that Schmitt did not treat the nudity of himself, his daughter, and others in the offhand, natural manner that might be expected if the conduct were purely innocent  for example, if they were nudists. Rather, the affidavit shows he made nudity a central and almost obsessive object of his attention. Thus, the magistrate reasonably could have believed that Schmitt's conduct toward his daughter included the "lewdness" element required by the statute. While nudity alone would not have sufficed, this overall focus of Schmitt's conduct tended to show a lewd intent and thus created a substantial basis for believing that the search would fairly probably yield evidence of a violation of section 827.071. Thus, the magistrate must be upheld. Gates, 103 S.Ct. at 2332.
Second and for the same reasons, the affidavit justified the magistrate's conclusion that a violation of section 800.04 had occurred. In pertinent part, that statute requires a "lewd or lascivious act in the presence of any child." Once again, we must construe the terms "lewd" and "lascivious" in light of our earlier precedent. Rhodes; Chesebrough. Here, we believe the affidavit created a substantial basis for the magistrate to conclude that Schmitt had participated in an intentional indecent act intruding upon the rights of his daughter. That is, Schmitt's conduct as described in the affidavit made nudity the focus of his attention, creating a reason to believe he was acting with a lewd and lascivious intent. This created a substantial basis justifying the magistrate's conclusion that probable cause existed of a violation of section 800.04.
For the above reasons, the decision of the magistrate to issue a warrant may not be disturbed on appeal. The warrant and all that flowed from it was lawful, because the magistrate had a substantial basis for believing that a search of Schmitt's home would disclose evidence of a violation of sections 827.071 and 800.04. Gates.

IV. Constitutionality of Section 827.071
We next turn to the question of whether section 827.071 is constitutional. Both the Fourth and Fifth Districts have concluded that the statute is overbroad on its face, and the state conceded as much at oral argument. However, there is substantial disagreement on how to remedy the problem.
As noted above, the court below attempted to eliminate the statute's patent overbreadth by reading a "lewdness" element into the statute, Schmitt, 563 So.2d at 1099-1100, a position also endorsed by the state at oral argument. The Fifth District, meanwhile, has remedied the problem by severing the portion of the statute identified as being overbroad. State v. Tirohn, 556 So.2d 447 (Fla. 5th DCA 1990). We now must resolve this conflict.

A. Overbreadth
The question of overbreadth is one of the rare exceptions to the rule that courts will not consider factual questions beyond the scope of the case at hand. "Hypothetical consequences" are considered in the case of allegedly overbroad statutes precisely because this is the only way to give effect to the constitutional right of free speech. Art. I, § 4, Fla. *412 Const. As we stated in another case dealing with an obscenity statute,
[T]he mere existence of statutes and ordinances purporting to criminalize protected expression operates as a deterrent to the exercise of the rights of free expression, and deters most effectively the prudent, the cautious and the circumspect... .
State v. Keaton, 371 So.2d 86, 91-92 (Fla. 1979) (quoting Spears v. State, 337 So.2d 977, 980 (Fla. 1976)).
The deleterious result of overbroad statutes often is described as a "chilling effect." Ferber, 458 U.S. at 772 n. 27, 102 S.Ct. at 3362 n. 27; see Broadrick v. Oklahoma, 413 U.S. 601, 611-14, 93 S.Ct. 2908, 2915-17, 37 L.Ed.2d 830 (1973). The overbreadth doctrine and its requirement of considering hypothetical consequences is intended to eliminate this chilling effect and thus allow for the free, unhindered exercise of constitutional rights. Accord Art. I, § 4, Fla. Const.
Florida case law is replete with instances in which this Court has stricken an obscenity statute because of its overbreadth after we considered the hypothetical consequences. E.g., Keaton, 371 So.2d at 92-93; Brown v. State, 358 So.2d 16 (Fla. 1978); Spears, 337 So.2d 977 (Fla. 1976). Indeed, application of the overbreadth doctrine is particularly appropriate where, as in Keaton, Brown, and Spears, the statute clearly infringes upon protected forms of pure speech. See Broadrick, 413 U.S. at 615, 93 S.Ct. at 2917-18. However, in the context of free speech and expression issues, the overbreadth doctrine is an unusual remedy that must be used sparingly, especially where the statute in question is primarily meant to regulate conduct and not merely pure speech. Id.; accord Art. I, § 4, Fla. Const.
The statute prohibiting sexual performance by children falls into this latter category of cases, since its obvious purpose is to prohibit certain forms of child exploitation. Thus, it is intended to regulate types of conduct and depictions of such conduct that, within the context of this case, also may have some incidental expressive content. See § 827.071, Fla. Stat. (1987).
In its opinion, the Tirohn court found a portion of the statute overbroad that criminalizes certain acts or depictions involving "actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast... ." Tirohn, 556 So.2d at 449 (quoting § 827.071(1)(g), Fla. Stat. (1987)). The court agreed that this language was defective and endorsed the following examples of overbreadth:
[T]he statutory definition of sexual conduct as drafted would prohibit possession of a picture of a father bathing his son, two clothed children hugging each other in such a way that their clothed genitals made actual physical contact, or a photograph of a junior high school coach giving a congratulatory smack of the hand to the buttocks of one of his players fully dressed in football uniform.
Id. at 448-49. Many other similar examples are noted by Schmitt in his appellate brief. Schmitt notes generally that virtually any photograph of close physical contact with a minor violates the statute. On the face of the statute, this unquestionably is true. Although these examples are hypothetical, the overbreadth doctrine requires us to consider the potential chilling effect of section 827.071 in all of these various contexts.
Indeed, a comparison of this statute with Florida's civil child-abuse statute reveals a puzzling inconsistency. The latter statute clearly is intended to deal with child abuse that does not necessarily rise to the level of being a crime but which nevertheless is harmful to minors. Yet, the civil child-abuse statute contains a far narrower standard than does its criminal-law counterpart contained in subsection 827.071(1)(g). The civil child-abuse prevention statute does not define simple nudity as a form of "sexual abuse of a child" unless
such exposure ... is for the purpose of sexual arousal or gratification, aggression, degradation, or other similar purpose.
*413 § 415.503(17)(f), Fla. Stat. (1987). Similarly, actual physical contact with a minor is not a form of sexual child abuse if it
may reasonably be construed to be a normal caretaker responsibility, an interaction with, or affection for a child; or ... [a]ny act intended for a valid medical purpose.
§ 415.503(17)(d), Fla. Stat. (1987).
The perplexing result is that, under section 827.071(1)(g), conduct is declared to be a felony that could not possibly be considered evidence of child abuse under chapter 415. On the face of the former statute, anyone who owns a photograph of a parent changing a baby's diaper technically has committed the crime of unlawfully possessing a depiction of "sexual conduct by a child," at least as that term is defined in subsection 827.071(1)(g). This crime is a third degree felony punishable by up to five years in prison. Compare id. with § 775.082(3)(d), Fla. Stat. (1987). Yet the actual act of changing the diaper is expressly declared not to be a form of child abuse under chapter 415 and thus would not even prompt a state investigation of the matter.
This serious inconsistency in itself reveals how substantially overbroad subsection 827.071(1)(g) is. We thus can only conclude that the portion of this statute stricken by the Tirohn court impermissibly chills the exercise of free speech and expression. Among other reasons, a chilling effect occurs because this portion of the statute directly restricts the ability to create or possess photographs or films of entirely innocent and innocuous activities involving families and children, which clearly are protected by the guarantee of free expression. Art. I, § 4, Fla. Const.

B. Due Process
Schmitt also argues that subsection 827.071(1)(g) violates Florida's guarantee of due process. Art. I, § 9, Fla. Const. We previously have stated the applicable rule:
As Judge Grimes phrased it in [State v. Walker, 444 So.2d 1137, 1140 (Fla. 2d DCA), affirmed & adopted, 461 So.2d 108 (Fla. 1984)], "without evidence of criminal behavior, the prohibition of this conduct lacks any rational relation to the legislative purpose" and "criminalizes activity that is otherwise inherently innocent." Such an exercise of the police power is unwarranted under the circumstances and violates the due process clauses of our federal and state constitutions.
State v. Saiez, 489 So.2d 1125, 1129 (Fla. 1986). In other words, a due process violation occurs if a criminal statute's means is not rationally related to its purposes and, as a result, it criminalizes innocuous conduct. Art. I, § 9, Fla. Const. We agree that a violation of this principle has occurred in the present case.
Here, there can be no rational reason for the legislature to criminalize the possession of innocent photographs of adults interacting with children, nor do we believe this was the legislature's true intent. While the legislature certainly has authority to eliminate child exploitation, it must do so with a reasonable precision that does not simultaneously outlaw innocent conduct and the normal incidents of homelife. As the Fifth District has noted, this statute would render illegal the possession of a snapshot of a parent bathing a baby, among other examples. To the extent this is true, the statute lacks a rational relationship to its obvious purpose and is void under the guarantee of due process. Art. I, § 9, Fla. Const.

C. Vagueness
Schmitt further challenges the statute as being impermissibly vague. We find this argument meritless. The statute certainly is not vague, since even its overbroad portion is sufficiently definite in language to tell persons of reasonable intelligence the kind of conduct that is proscribed. See State v. Ferrari, 398 So.2d 804 (Fla. 1981).

D. Alleged Deficiencies in Subsection 827.071(5)
In his brief, Schmitt alleges that subsection 827.071(5), under which he was convicted, is void because it lacks a sufficient *414 scienter element and is overbroad. We disagree that subsection 827.071(5) lacks a sufficient scienter element. Indeed, it contains two separate intent requirements:
It is unlawful for any person to knowingly possess any photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, he knows to include any sexual conduct by a child.
§ 827.071(5), Fla. Stat. (1987). There thus is no question that the misbehavior reached by the statute is the intentional exploitation of children. This is legitimately related to the legislative goal of eliminating the market for the fruits of such exploitation. However, for the reasons expressed above, we agree that subsection 827.071(5) is overbroad to the extent that it incorporates by reference the definitional element of subsection 827.071(1)(g) that was stricken by the Tirohn court.

E. Severability
The question remaining is whether the constitutional defects noted above require us to strike all of section 827.071 or whether we may adopt a limiting construction. We believe the latter course is in order.
This conclusion is supported by the United States Supreme Court's recent opinion in Osborne v. Ohio, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), which addressed whether a state court always must strike an overbroad statute in its entirety. There, the Ohio Supreme Court had eliminated the overbreadth of a state child pornography statute by judicially reading a scienter element into it, much like the action taken by the district court below. The Osborne majority expressed reservations about this procedure[11] but approved it nonetheless. Thus, the Osborne Court clearly recognized that state courts may adopt a narrowing construction that eliminates statutory overbreadth. We thus must determine whether Florida law permits our own courts to take a similar action.
Tempting as the Fourth District's analysis below may seem, we are deeply troubled by its suggestion that a court may read a lewdness element into a statute that plainly lacks one, in its pertinent parts. See § 827.071, Fla. Stat. (1987). Florida's strong adherence to a strict separation of powers doctrine, art. II, § 3, Fla. Const., has led this Court to repeatedly warn against judicial legislation. In Brown, for example, we stated:
The Florida Constitution requires a certain precision defined by the legislature, not legislation articulated by the judiciary.
Brown, 358 So.2d at 20 (citing art. II, § 3, Fla. Const.). Because of Florida's nondelegation doctrine, we believe the court below erred in reading an additional element into a statute. In re Order on Prosecution of Criminal Appeals, 561 So.2d 1130, 1137 (Fla. 1990).
As noted above, the other approach to this problem was that of the Tirohn court, which simply excised the statutory language it found to be overbroad. The Tirohn court did so by resort to a four-part test we recently applied in the case of Waldrup v. Dugger, 562 So.2d 687, 693 (Fla. 1990). This test is used to determine if unconstitutional subunits of statutes are severable. Put another way, the question is whether the taint of an illegal provision has infected the entire enactment, requiring the whole unit to fail.
The four-part test originated in our earlier opinion in Cramp v. Board of Public Instruction, 137 So.2d 828, 830 (Fla. 1962), upon which Tirohn directly relied. Tirohn, 556 So.2d at 449. The Cramp test is as follows:

*415 "When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken."
Waldrup, 562 So.2d at 693 (quoting Cramp, 137 So.2d at 830). Accord Tirohn, 556 So.2d at 449.
The Cramp test is a well established component of Florida law. It has been applied repeatedly in countless Florida cases, some of which are cited by the Tirohn court.[12] 556 So.2d at 449. The Cramp test also harmonizes with the nondelegation doctrine, since the test is designed to show great deference to the legislative prerogative to enact laws. Art. II, § 3, Fla. Const. Accordingly, we agree that the Tirohn court's method of analysis is the appropriate one to apply here.
On this question, we first find that the illegal language of subsection 827.071(1)(g) clearly can be separated from the remaining valid language without rendering the enactment nonsensical or otherwise changing its essential meaning beyond what is necessary to cure the constitutional defect. Second, the legislative purpose clearly is served by severing the illegal portion. Section 827.071 expresses an undeniable legislative intent to root out child exploitation, and we believe this Court would do a grave disservice to the state by striking the remainder of the statute simply because a single clause is unconstitutional.
Third, in light of the statute's compelling purpose, we believe it self-evident that the legislature would have approved the remainder of the statute without the illegal portion had it appreciated the deficiencies of the latter. Fourth and last, there is no doubt that an act complete in itself remains after the invalid portion has been removed. Waldrup, 562 So.2d at 693 (quoting Cramp, 137 So.2d at 830). The remainder of the statute directly outlaws sexual abuse and sexual exploitation of children in a way that harmonizes with Florida's civil child-abuse laws. To this extent, it is entirely permissible.
For the foregoing reasons, we hold subsection 827.071(1)(g) void solely to the extent that it defines "sexual conduct" to include "actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast;... ."
We find that, in light of the foregoing holding, subsections 827.071(1)(g) and 827.071(5) are otherwise constitutional and valid. The other conduct proscribed by the relevant portions of the statute consists of several kinds of actual or simulated sexual acts, bestiality, masturbation, sadomasochism, lewd exhibition of the genitals, or actual or simulated sexual battery. § 827.071(1)(g), Fla. Stat. (1987). Each of these elements is precisely defined either in the statute itself or by reference to terms such as "lewd" that have a sufficiently narrow meaning under Florida's common law, as noted above. § 827.071(1), Fla. Stat. (1987).
More to the point, the nature of these other acts is qualitatively different from those described in the unconstitutional portion of subsection 827.071(1)(g). Each of these acts are of a kind that, in all contexts, are likely to result in serious physical or psychological harm to children who participate in them. Society's interest in preventing such participation is compelling. This is in sharp contrast to the language *416 excised by the Tirohn court and by our opinion today, which unquestionably included countless kinds of completely innocent, innocuous conduct.

V. Failure to Use the Legal Definition of "Obscenity"
In a separate argument, Schmitt challenges section 827.071 on grounds that it fails to define child exploitation offenses in the same terms the Constitution mandates for "obscenity." We do not believe this to be error in this instance.
The law plainly allows a lesser tolerance for depictions of the sexual exploitation of children. Here as in Osborne, the state's primary purpose is to destroy the market for such material and thus eliminate the economic incentive for the exploitation itself. Indeed, the exploitation of children for sexual purposes involves a level of heinousness of the highest magnitude. Even if obscenity analysis is applicable in this context, we thus believe that a conviction for possessing depictions rendered unlawful under section 827.071 as construed in this opinion always would meet the test for "obscenity" developed in Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). There, the Court stated the following method of proving "obscenity":
(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest ...; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
Id. (citations omitted).
The conduct described in section 827.071, as construed above, inherently involves conduct that appeals to prurient interest, and inherently depicts patently offensive sexual conduct as that term is specifically defined in Florida law. Our opinion today eliminates the possibility that depictions of innocent conduct might be encompassed within this definition. Moreover, we can conceive of no serious literary, artistic, political, or scientific interests that would ever justify the sexual or sadomasochistic exploitation of children. By convicting under section 827.071 as construed here, a fact finder logically and necessarily concludes that all the elements of the Miller test have been satisfied. Accordingly, Schmitt's argument on this question must fail.

VI. Conclusions
For the foregoing reasons, the opinion below is approved in part and quashed in part. We agree that a substantial basis existed for a magistrate to issue a warrant for the search of Schmitt's home. We agree that subsections 827.071(1)(g) and 827.071(5) are constitutional, since we find that these provisions are constitutional as we have construed them above.[13] On this last question, we disagree with the analysis and rationale of the court below and quash the opinion to this extent. However, because the result reached below was correct, no remand is necessary. Finally, we approve the result reached in Tirohn.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and HARDING, JJ., concur.
McDONALD, J., concurs in result and dissents in part with an opinion.
KOGAN, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in result, dissenting in part.
I would approve the decision under review. We accepted jurisdiction primarily to *417 rule upon the constitutionality of subsection 827.071(5), Florida Statutes (1987). The majority opinion finds a part thereof unconstitutional. I disagree. In doing so I hasten to add that, while on its face it may appear to be overbroad and cover innocent acts, if we construe it as applying only to lewd or lascivious conduct, it is not.[14] In reviewing a statute under attack as being overbroad, the court should construe it in a reasonable manner. I can envision many acts, such as "lap dancing," that this provision was intended to prohibit and upon which the legislature can legitimately act.[15] I also have a problem in striking a provision in a statute which obviously does not apply to this defendant. Had Schmitt been charged with that portion of the statute when the victim was clothed, then we should look at the particular facts and determine whether the act is being constitutionally applied.
On the issue of whether the search warrant was valid, I agree that it was, and concur with the result reached by the majority on this issue. The language of the affidavit for the search warrant, standing alone, did not describe conduct constituting an ongoing crime. As I understand it, however, this is not dispositive. The question to be resolved by the issuing magistrate is whether, because of the sworn known acts, it is probable that the defendant is committing additional or other acts constituting the prohibited crime described in the affidavit. I do not believe the magistrate abused his discretion in concluding that he was. While great care should be exercised in authorizing a search warrant of a private residence, I cannot find that the trial judge erred in issuing the one in this case. I concur in the approval of Schmitt's conviction.
KOGAN, Justice, concurring in part, dissenting in part.

I.
I concur in the majority opinion except its conclusion that probable cause existed for the issuance of the warrant, because I do not believe the affidavit alleged anything that may be considered "lewd" or "lascivious" as those terms are defined by Florida law. Here, the probable cause affidavit makes no factual allegation of child abuse, which unquestionably is an intrusion upon the rights of the child. Nor is there any allegation here that the films in Schmitt's home were displayed beyond the privacy of the home in such a way as to intrude upon the rights of others. Nothing in the affidavit remotely suggests that the activities depicted in Schmitt's films were legally obscene or constituted an intentional intrusion upon the rights of others caused by any lewd act. See Stall; Rhodes; Chesebrough. There is no allegation of any intentional act involving sexual indulgence or public indecency offensive to others. The affidavit alleges only simple nudity.
Indeed, the affidavit shows only that the Schmitts and their friends took photographs of one another in the nude, without any sexual activity or coercion of any sort. While this behavior might be unorthodox, it is no more sinister than the precise same activity occurring in countless numbers of nudist resorts throughout the United States and around the world every day. As the majority notes, intentional but harmlessly discreet unorthodoxy cannot properly be characterized as either "lewd" or "lascivious." See Chesebrough, 255 So.2d at 678.
I also share the majority's concern for the protection of our children. While I in no sense condone any of Schmitt's alleged misconduct, I likewise cannot vote to affirm a conviction that arose solely because of a needlessly hasty investigation and an inadequate probable cause affidavit. Here, it is all too easy to toss aside legal requirements that we would not ignore in other less sensationalized contexts. Allegations of child abuse raise strong emotions that render people prone to forget legal strictures. *418 This is all the more reason why the courts should be especially vigilant to protect the rights of both adult and child in cases of this type.
Thus, I would reverse Schmitt's conviction. Such a reversal would not prevent state child abuse officials from taking any actions they deem appropriate to protect the welfare of Schmitt's daughter, within the letter of the law.

II.
Despite the objections noted above, I fully concur in parts IV and V of the majority. However, I would address one further issue raised by the parties. Here, Schmitt also argues that subsections 827.071(1)(g) and 827.071(5) violate Florida's constitutional right to be let alone. Art. I, § 23, Fla. Const. I believe that the present case does in fact implicate privacy because the statute authorizes an intrusion into the home and other personal and family matters, which hold an especially protected status under Florida privacy law. However, this fact alone does not entirely dispose of the issue, to my mind.
While there is a right to possess pornographic depictions in a private home, Stall, 570 So.2d at 259-60; Keaton, 371 So.2d at 91 (citing Stanley v. Georgia, 394 U.S. 557, 564-65, 89 S.Ct. 1243, 1247-48, 22 L.Ed.2d 542 (1969)), this right is not absolute. The state is entitled to infringe even upon the privacy of the home provided it can demonstrate a compelling state interest achieved through the least intrusive means.[16]T.W., 551 So.2d at 1192 (citing Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla. 1985)).
As Stanley, Stall, and Keaton recognized, the state's interest in infringing upon the privacy of the home is weaker when the aim is seizing or regulating pornographic depictions of adults. In Osborne, the United States Supreme Court noted that one purpose of such efforts is "a paternalistic interest" in regulating people's minds. Osborne, 110 S.Ct. at 1696. The United States Supreme Court also has found a lack of evidence establishing that pornography in and of itself leads to deviant sexual behavior or crimes of sexual violence, or somehow diminishes the deterrent effect of rape and battery laws. Id. (citing Stanley, 394 U.S. at 566-67, 89 S.Ct. at 1248-49). Accord art. I, § 23, Fla. Const.
The same conclusions are not true with child pornography. There is absolutely no question that the protection of children is a paramount interest of the state, far more weighty than other interests previously recognized as "compelling" in Florida privacy cases. As the Ferber Court stated:
It is evident beyond the need for elaboration that a State's interest in "safeguarding the physical and psychological wellbeing of a minor" is "compelling."
Ferber, 458 U.S. at 756-57, 102 S.Ct. at 3354 (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). I believe it equally clear that one of the primary purposes of subsection 827.071(5) is to eliminate the exploitation of children for pornographic purposes by eliminating the market for child pornography. This interest unquestionably is compelling.[17] On this, every *419 court addressing this issue appears to agree. Osborne, 110 S.Ct. at 1695-96 (citing cases).
The second prong of privacy analysis requires the Court to determine whether the state has achieved its compelling interests through the least intrusive means. This issue is closely linked to the question of overbreadth in the context of cases such as the present one, where privacy interests substantially overlap free-expression interests. That is, the interests at stake here include a right of free expression within the privacy of the home and the family unit.
Unlike overbreadth analysis, the primary focus in privacy cases is not on the hypothetical factual consequences of a potentially overbroad statute but on whether the statute in question has used the least intrusive means available to the legislature. In re T.W., 551 So.2d 1186, 1192 (Fla. 1989) (citing Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla. 1985)). It is obvious, however, that some consideration must be given to the various consequences of a statute in determining whether the means is "least intrusive." If the legislature fails to narrowly tailor the statutory language to achieve only its legitimate purposes, then it has failed to choose the least intrusive means. An overbroad statute by definition intrudes where the state has no right to be.
Thus, for the same reasons expressed in the majority's discussion of free expression interests, I also must conclude that subsection 827.071(1)(g) has failed to use the least intrusive means. Because the statute is overbroad, it cannot also be least intrusive. I therefore would hold that the statutory language stricken by the Tirohn court violates article I, section 23 of the Florida Constitution because, among other reasons, it impermissibly restricts the ability of parents to interact with their own children in a variety of innocuous ways. The statute also restricts the ability of parents and many others to take photographs or films of entirely innocent activities. These restrictions extend far into areas protected by Florida's express right of privacy, and most particularly into the home and family life. Art. I, § 23, Fla. Const.
The result reached by the majority, however, entirely comports with my conclusions on the privacy issue. By striking the offensive portion of the statute on other grounds, the majority effectively has eliminated the overintrusive part of the statute. I also note, as does the majority, that the 1991 Florida Legislature has amended the portion of the statute being stricken by this opinion. Thus, the present opinion affects only those cases arising under the statute before the amendment's effective date of October 1, 1991. See Ch. 91-33, § 1, Laws of Fla. (1991).
NOTES
[1] There thus is a double scienter requirement.
[2] The information, however, did not charge any offense under Florida's obscenity statute, chapter 847, Florida Statutes (1987).
[3] Section 827.071, Florida Statutes (1987), prohibits several discrete kinds of conduct. On the face of the statute, only one kind requires a "lewdness" element  "lewd exhibition of the genitals." § 827.071(1)(g), Fla. Stat. (1987).
[4] Obviously, the terms "obscene" and "non-obscene" must be given their legal definition, not the more loose workaday definition employed in common American usage.
[5] We are aware that in McGuire v. State, 489 So.2d 729, 731 (Fla. 1986), we stated that "nudity is not in and of itself a constitutionally protected activity." However, this statement clearly was a reference to public nudity, not nudity in a place where a person has a right of privacy. Indeed, the factual issue in McGuire was whether a woman could be prosecuted for jogging topless along a public beach. Id. at 730. In other words, the additional element in McGuire was the defendant's appearance in a public place. McGuire also expressly noted that it was not confronting any free-expression issues. Id. at 731.
[6] Even Florida's civil child-abuse prevention statutes have reached these same conclusions by defining nudity as a form of "sexual abuse of a child" only if

such exposure ... is for the purpose of sexual arousal or gratification, aggression, degradation, or other similar purpose.
§ 415.503(17)(f), Fla. Stat. (1987). These same statutes likewise expressly recognize that adults may physically touch a child whenever the contact
may reasonably be construed to be a normal caretaker responsibility, an interaction with, or affection for a child; or ... [a]ny act intended for a valid medical purpose.
§ 415.503(17)(d), Fla. Stat. (1987).
[7] However, infra we find unconstitutionally overbroad that portion of the statute making it unlawful to possess depictions or representations of someone touching a persons' clothed or unclothed privates or buttocks. Thus, probable cause could not be established simply by making factual allegations that such depictions or representations exist.
[8] The act must be intentional. For example, deliberately exhibiting one's nude body to passers-by in a shopping mall would be "lewd" and "lascivious." Being stripped naked against one's will in the same location is neither "lewd" nor "lascivious" because it is not intentional.
[9] Although not relevant here, the terms "lewd" and "lascivious" have a specialized meaning in the context of photographs, films, or other depictions: an obnoxiously debasing and offensive portrayal of sex acts that can be characterized as "obscene." Stall v. State, 570 So.2d 257, 259 (Fla. 1990) (quoting Manual Enters, Inc. v. Day, 370 U.S. 478, 482-84, 82 S.Ct. 1432, 1434-35, 8 L.Ed.2d 639 (1962), cert. denied, ___ U.S. ___, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991)).
[10] Obviously, minor children are legally incapable of consenting to a sexual act in most circumstances. See, e.g., Fla. Stat. §§ 794.041 & 794.05 (1989). One exception is for a minor who is lawfully married. Fla. Stat. § 743.01 (1989).
[11] In dictum the majority expressed some concern that such a judicial revision of the statute "might be barred by the Due Process Clause" (emphasis added). Osborne v. Ohio, 495 U.S. 103, 110 S.Ct. 1691, 1701, 109 L.Ed.2d 98 (1990). The Court did not elaborate on this dictum, which obviously is not a part of the holding of the case and thus is not binding upon us. We need not and therefore do not confront the possible due process issue suggested by the Osborne Court's dictum. The issue has not been briefed and is not necessary to the resolution of this case. Nor is it clear what the Osborne Court intended by this remark.
[12] The Cramp test rests on another Florida rule that severability does not always depend on the inclusion of a severability clause in a legislative enactment. Such a clause only buttresses the case for severability. If the four parts of the Cramp test are met, severability can occur whether or not the enactment contains a severability clause. Simultaneously, the inclusion of a severability clause will not save a statute if the unconstitutional portions clearly cannot be severed. See Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla. 1962).
[13] We note, however, that our opinion applies only to the statutes as they existed prior to amendments made to them in 1991. The Legislature has altered the relevant portions of the statutes by adding a new intent element. See Ch. 91-33, § 1, Laws of Fla. (1991) (effective Oct. 1, 1991). Obviously, our opinion today does not address any question about the validity of the statutes as amended.
[14] This is how the district court of appeal construed the statute.
[15] It is better, however, that the legislature amended the statute to clearly express its intent in this regard.
[16] Of course, the state also must honor the warrant requirements of section 933.18, Florida Statutes (1987).
[17] My conclusion would be the same even on a showing that the child consented to be exploited for pornographic purposes. Some confusion on this point has been attributed to In re T.W., 551 So.2d 1186, 1193 (Fla. 1989), which recognized the right under the state privacy amendment of a minor (and, indeed, of all women) to obtain an abortion. Abortion, however, is a vastly different concern than a child's participation in pornographic exhibitions. Pregnancy is a uniquely personal matter for any woman, especially an adolescent; it involves enormous personal, medical, familial, psychological, and financial concerns and risks that will fundamentally change an adolescent's entire life. I believe that T.W. stands for the proposition that, under article I, section 23 of the Florida Constitution, the state may not force any female to encounter these risks against her will, subject to certain reasonable exceptions elaborated in T.W. None of these concerns are present when the state prevents a child from being exploited for pornographic purposes. Indeed, the state's intervention in this setting is designed to prevent harmful physical and psychological effects of which the child may be wholly unaware. The state's interest in preventing such harm thus clearly outweighs whatever "right" children may have in consenting to this type of exploitation.