919 So.2d 504 (2005)
STATE of Florida, Petitioner,
v.
Alice L. KEES, et al., Respondent.
No. 5D05-589.
District Court of Appeal of Florida, Fifth District.
December 2, 2005.
Rehearing Denied January 27, 2006.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach for Petitioner.
Richard L. Wilson, Orlando, for Respondent.
PALMER, J.
The State has filed a petition seeking certiorari review of the decision of the circuit court, acting in its appellate capacity, affirming the county court's dismissal of criminal charges filed against the respondents. We grant the petition, quash the circuit court's order, and remand for reinstatement of the charges.
The record establishes that the Seminole County Sheriff's Department sent two undercover officers to the Red Horse Saloon for the purpose of investigating alleged illegal conduct. The officers paid an admission fee and entered the lounge. While inside the lounge, the officers observed the following acts committed by the respondents: women exposing their breasts and men kissing them, men inserting their fingers into women's exposed vaginas, and a man lifting the skirt of a woman and performing cunnilingus on her.
Respondents were arrested and charged with committing lewd and lascivious acts as well as exposing their sexual organs in violation of sections 796.07 and 800.03 of the Florida Statutes (2004). They filed a *505 motion to dismiss the charges in county court, arguing that dismissal was warranted because there was no evidence that anyone within the class of persons to be protected by the statutes was offended by the respondents' conduct. The State filed a traverse stating that one of the undercover deputies was offended by the respondents' conduct, and further that, since the acts were performed in a public place, the State was not required to prove that someone was offended in order to establish that a crime had been committed.
At the dismissal hearing, the county court concluded that the Red Horse Saloon was a public place, relying on unrebutted testimony that in order to gain entry to the lounge the undercover officers merely had to give their first names and pay a nominal fee. The county court further held that the types of exposures described in the informations, coupled with the physical acts allegedly performed, could constitute the type of conduct proscribed by the Florida Statutes. However, the county court agreed with the respondents' contention that the State is required to demonstrate that a person was offended by the alleged illegal conduct in order to establish a prima facie case, and that said person cannot be the law enforcement officer who made the observations. Accordingly, the county court granted the respondents' motion and dismissed the charges.
The State filed an appeal with the circuit court, acting in its appellate capacity. The circuit court affirmed the county court's dismissal order. In so ruling, the circuit court cited to Schmitt v. State, 590 So.2d 404 (Fla.1991), wherein the supreme court defined a lewd act as requiring "an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others." Id. at 410. The State seeks certiorari review by this court of the circuit court's ruling.
The standard that applies for review by this court of a decision rendered by the circuit court acting in its appellate capacity is whether the circuit court's decision is either a departure from the essential requirements of law or did not afford procedural due process. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003). A departure from the essential requirements of law has been held to be synonymous with an application of incorrect law. Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995).
The State raises no due process claim, but instead argues that the circuit court applied the incorrect law in reaching its decision. The State contends that, since the instant lewd activity occurred in a public place, the State is not required to present proof that someone was offended by the respondents' conduct in order to establish a prima facie case. We conclude that an analysis of the applicable statutes and case law supports the State's position.[1]
We begin by recognizing that the specific statutes involved in this prosecution do not, on their face, require the State to submit proof that anyone was offended by the prohibited conduct. In that regard, section 796.07 of the Florida Statutes defines lewdness as any indecent or obscene act and makes it unlawful to commit or engage in lewdness. Section 800.03 of the Florida Statutes makes it unlawful to expose or exhibit one's sexual organs in public. Since, on their faces, the statutes do *506 not require proof that someone was offended by the alleged illegal conduct in order to establish the elements of the crimes, we must look to Florida's case law to determine whether the courts have required the State to submit such proof.
The county court and the circuit court both relied on Schmitt v. State, 590 So.2d 404 (Fla.1991), to support the contention that proof that someone was offended is an essential element of the crimes of lewd and lascivious conduct and exposure of sexual organs. However, Schmitt involved illegal conduct occurring in a private, not a public, place. As such, we conclude that the ruling in Schmitt is both factually and legally distinguishable.
In Schmitt, a father was arrested for taking nude photographs of his minor daughter and others in the family home. Although mindful of the privacy interests of family members within their home, the supreme court stated that the home could not be used as a shield to deflect a valid state investigation into whether a child was being exploited by an adult who was engaging in lewd activities. The court stated that "under Florida criminal law the terms `lewd' and `lascivious' are synonymous: both requiring intentional acts of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others." Id. at 410 (footnote omitted). However, the footnote contained in that passage makes clear that, if the lewd act occurs in a public place, it either inherently "intrudes upon the rights of others" or is objectively offensive, and therefore, is criminal. Specifically, in footnote 8, the supreme court discussed the requirement that the act be intentional, noting: "For example, deliberately exhibiting one's nude body to passers-by in a shopping mall would be `lewd' and `lascivious'. Being stripped naked against one's will in the same location is neither `lewd' nor `lascivious' because it is not intentional." Schmitt v. State, 590 So.2d at 410 n. 8. Importantly, the supreme court did not qualify that categorical statement by indicating that someone in the mall would have to be offended in order for a statutory violation to have occurred.
Furthermore, review of the primary cases relied on by the Schmitt court; namely, Rhodes v. State, 283 So.2d 351 (Fla.1973), and Chesebrough v. State, 255 So.2d 675 (Fla.1971), also supports our interpretation of the Schmitt case.
In Rhodes, the supreme court upheld the conviction of a defendant who exhibited movie films in violation of obscenity statutes. In rejecting the defendant's argument that the terms lewd and lascivious were unconstitutionally vague, the court cited with approval the definition that those terms mean "an unlawful indulgence in lust, eager for sexual indulgence." The Rhodes court then cited to the Chesebrough case for the principle that "it is no longer necessary that such acts be committed in a public place or in the presence of many people. It has been held sufficient that it is an intentional act of lewdness, offensive to one or more persons present." Rhodes v. State, 283 So.2d at 357. In Chesebrough, the court noted that at common law lewdness, as well as open and public indecency, have always been crimes. Chesebrough v. State, 255 So.2d at 678.
Review of this case law makes clear that the consideration of whether someone was offended by a defendant's alleged lewd conduct was added by the courts only in circumstances when the charge of lewdness was being applied to *507 conduct occurring in private places.[2] Numerous decisions from Florida courts implicitly acknowledge this distinction between conduct occurring in public and private places.
For example, in Hoskins v. Department of Business Regulation, Division of Alcoholic Beverages and Tobacco, 592 So.2d 1145 (Fla. 2d DCA 1992), the second district held that a lap dance performed in public constituted lewd conduct in violation of section 796.07 of the Florida Statutes, with no indication that proof was required that someone was offended by the defendant's conduct. In State v. Davis, 623 So.2d 622 (Fla. 4th DCA 1993), the fourth district reversed the county court's dismissal of an information charging a violation of section 796.07 of the Florida Statutes even though no one was present at the time of the alleged act other than the defendant and the undercover detective. In State v. Bales, 343 So.2d 9 (Fla.1977), our supreme court held that the denial of a motion to dismiss a lewdness count entered under section 796.07 of the Florida Statutes was not erroneous, even though the only persons present at the time of the alleged act were the defendant and the undercover police officer.
Additionally, we conclude that, if the courts were to require the State to prove that a party other than a law enforcement officer was offended by a defendant's lewd and lascivious conduct when said conduct occurs in a public place, such a ruling would lead to absurd results. For example, a person who is observed by police exposing himself in a public park could not be prosecuted until the police allowed the exposure to occur in the presence of members of the public and a member of the public was willing to testify in court that he or she was offended by the act. Similarly, a couple could engage in sexual intercourse in a public park without fear of prosecution, unless other members of the public also observed them, were offended, and were willing to so testify in court.
In closing, we note that, even if this court were to have concluded that an element of "offensiveness" was contained in the instant statutes, dismissal of the instant charges would still not have been warranted under the facts at hand because, in order for the "offensiveness" element to be constitutionally valid, an objective reasonable person standard, not a subjective standard, must be used since the application of a subjective standard would allow an overly sensitive member of the public (or a member of the police force) to object to conduct which was not objectively offensive thereby exposing a criminal defendant to arbitrary and capricious prosecution. Similarly, potentially criminal conduct could go unpunished if the observer of the conduct was particularly insensitive to it.[3] Application of the *508 objective reasonable person standard to the instant case lead us to conclude that the conduct observed by the undercover officers at the Red Horse Saloon was sufficient to at least create an issue of fact for determination by the jury as to whether the respondents' conduct was offensive.
Petition GRANTED; Order QUASHED; Case REMANDED.
GRIFFIN, J., concurs.
TORPY, J., dissents without opinion.
NOTES
[1] The county court's finding that the Red Horse Saloon was a public place was affirmed by the circuit court, and the respondents have not contested that finding in this certiorari proceeding.
[2] As Justice Scalia noted in his concurring opinion in Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991): "The purpose of Indiana's nudity law would be violated, I think, if 60,000 fully consenting adults crowded into the Hoosier Dome to display their genitals to one another, even if there was not an offended innocent in the crowd."
[3] Several courts in other states have recognized the appropriateness of utilizing an objective standard in similar situations. In State v. Bushey, 425 A.2d 1343 (Me. 1981), the Supreme Judicial Court of Maine noted:

The aim of criminal laws is to protect the public against harm. The State brings criminal proceedings to protect the public's interest, not to compensate the victim ... The focus of criminal law is upon the defendant's behavior; the question to be asked is whether it is in the public interest to let such behavior go unpunished. If a subjective standard were always to be applied, conduct which the public at large condemns would at times go unpunished because of the fortuitous circumstance that the victim was unusually insensitive or slow to take offense. Moreover, if a subjective standard alone were applied, innocuous physical contact such as a tap on the shoulder might become the basis for an assault conviction should the "victim" be unusually sensitive or easily offended.
Id. at 1346-1347. Similarly, in State of Kansas v. Wells, 223 Kan. 94, 573 P.2d 580 (1977), the court held that the words in a statute "lewd fondling or touching" required the State "to prove a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person." In People of the State of New York v. Benders, 63 Misc.2d 572, 312 N.Y.S.2d 603 (1970), the court held that a statute proscribing abusive or obscene language or making an obscene gesture in a public place with intent to harass or annoy another person must be judged by an ordinary reasonable man standard, not as a supersensitive or hypercritical individual might judge it.