MAKAR, J.
William E. Ware, convicted of exposing his sexual organs and exhibiting them lewdly/lasciviously in the presence of a disabled person, claims the trial court erred in denying his request to present evidence that the victim, L.R., was subjected to a sexual battery years ago. He claims the prior sexual battery was relevant because it may have impacted L.R.’s ability to “accurately perceive and testify about a new sexual assault.” We affirm.
I.
On a seasonable May afternoon in 2011, L.R. — who has a medical condition that makes walking extremely difficult — was out and about running errands at various stores on the Westside of Jacksonville with *389 her 22-year-old daughter. They had taken the city bus to the area, so L.R.’s daughter assisted by pushing her mom’s wheelchair from store to store. Their leisurely afternoon of familial shopping would soon end in an unpleasant way.
Earlier that day, Officer Hysler of the Jacksonville Sheriffs Office had been dispatched to handle a call of a suspicious person at a bus stop near a CVS pharmacy, whose employee phoned in the complaint. Upon arrival, the officer found Ware, who appeared “kind of out of it” and was yelling at people. The officer, who told Ware to leave the bus stop, soon left to respond to an unrelated call nearby.
Shortly thereafter, L.R. and her daughter made the last stop on their agenda, which happened to be the same CVS pharmacy. Upon finishing their day of shopping together at the CVS, they crossed the street to the bus stop to await a ride home. Ware was still there. When L.R. and her daughter arrived, he was acting in a bizarre manner, yelling at passing cars for no reason and mumbling under his breath. Feeling uneasy, they tried to direct their attention elsewhere. Ware’s strange behavior continued, however, so L.R. and her daughter began to practice gospel songs for their church choir practice that evening. Ware then asked the ladies if they were mother and daughter and what they were singing. L.R.’s daughter replied that they were singing church songs and looked away. Ware resumed his pacing back and forth between the bus stop bench and a nearby trash can into which he continually spat.
When he began “messing with the snaps on [his] shorts,” L.R. asked her daughter to move her further away from Ware, who was within only a few feet. Ware then walked to the trash can again, spat, and upon returning, stood right next to L.R. and asked her if “we could show [your] daughter how to swallow.” At that point, L.R. and her daughter decided they had enough of Ware’s crude behavior and started to leave. Ware walked back to the trash can, spat again, and approached the women, this time with his penis and testicles pulled out and fully exposed. L.R.’s daughter pushed her mom away from the bus stop as quickly as possible, back to the nearby CVS pharmacy from where the police were called a second time. Officer Hysler, who responded to the first call about Ware, arrived to find L.R. distraught and traumatized by what happened.
Ware was arrested and charged with lewd or lascivious exhibition in the presence of a disabled person[1] and exposure of sexual organs.[2] At trial, Ware’s counsel sought to introduce evidence that L.R. was a victim of a prior sexual battery, ostensibly to impeach her credibility by demon *390 strating a bias associated with this type of event or an inability to properly perceive what had occurred. The State filed a motion in limine to prevent Ware from cross-examining L.R. about the previous sexual battery. The trial court granted the motion, ruling that evidence of a prior sexual battery was irrelevant. The jury found Ware guilty of both charges. The trial court sentenced Ware to four years in prison, one year of probation, and mandatory registration as a sexual offender.
II.
A.
Ware first argues that evidence that L.R. was subject to a prior sexual battery is relevant to show bias because she “may be so traumatized by the prior sex offense that [she] may be overly sensitive to what a reasonable person might deem suspicious or threatening behavior” and that trauma may affect “what the victim ‘thinks’ [she] saw happening.”[3] Under the abuse of discretion standard, this argument fails for several reasons. Pantoja v. State, 59 So.3d 1092, 1095 (Fla.2011) (standard for review of admissibility of evidence is abuse of discretion).
First, Ware’s core claim is that L.R.’s past experience as a victim of sexual battery makes her a potentially more sensitive victim in this case, which he views as a basis for examining her about the matter. But, in support of this point, Ware cites only Fehringer v. State, 976 So.2d 1218, 1221-22 (Fla. 4th DCA 2008), which is a “prior accusation” case, i.e., one where a defendant in a sexual battery case seeks to prove that the victim had falsely claimed rape on prior occasions or consented to the act. In such cases, it is proper to admit evidence that a victim’s “allegations that [the defendant] raped her on prior occasions is inconsistent with her continued relationship with him after.” Minus v. State, 901 So.2d 344, 350 (Fla. 4th DCA 2005). Or, as the Fourth District said in Fehringer, that such an inquiry is allowed because “[i]t may be that the prior accusations will cast doubt on the current one by, for example, being remarkably similar in content, or made against a person similar to the defendant.” 976 So.2d at 1222.
No such parallelism is found here. Ware does not claim L.R. made prior accusations of sexual battery against him or others, only that she was the actual victim of such an attack and might be overly sensitive because of it. He also makes no claim that L.R. has ever made prior accusations that are remotely similar to the exposure of genitals here. He does not claim he knew either L.R. or her daughter before their unfortunate bus stop encounter with him, nor does he claim L.R. somehow consented to his actions. The situation is like that in Pantoja, where the Florida Supreme Court found no error in excluding a prior accusation that was against a different person, involved a onetime dissimilar act, and had the possibility of misleading the jury. 59 So.3d at 1100. In short, we agree with the trial court that there would be no relevance in allowing Ware to cross-examine L.R. about her pri- or sexual battery.
Second, L.R.’s reaction to Ware’s exposure of his genitalia is not an element of either of the crimes charged or of Ware’s defenses. Whether her reaction was exaggerated, subdued, or nonchalant is legally insignificant as to whether he unlawfully exposed his genitals. Ware would be no less guilty of violating the two statutes if *391 L.R. had remained calm and lampooned Ware’s crude behavior by laughing at him. See Ross v. State, 876 So.2d 684, 686 (Fla. 4th DCA 2004) (evidence defendant “deliberately wore short shorts that were substantially sure to lead to the exposure of his penis” sufficient to establish guilt despite argument with witness who told him to “tuck it in”). As the Florida Supreme Court in Schmitt v. State hypothetically noted, “deliberately exhibiting one’s nude body to passers-by in a shopping mall would be ‘lewd’ and ‘lascivious.’ Being stripped naked against one’s will in the same location is neither ‘lewd’ nor ‘lascivious’ because it is not intentional.” 590 So.2d 404, 410 n. 8 (Fla.1991).
Third, offenses involving the lewd exposure of sexual organs are akin to visual assault, which reflects an element of public decorum that can change as society’s norms change. As this Court has noted, this “change of attitude is illustrated by the fact that until recent times the waltz and the two-step were considered by a great many worthy and high-minded people as lewd and lascivious devices calculated to promote the works of the devil.” Duvallon v. State, 404 So.2d 196, 197 (Fla. 1st DCA 1981) (overturning conviction of woman who, protesting in front of Florida Supreme Court, wore only a placard that “allowed exposure of her bare backside and the sides of her breasts”). Ware makes no argument that his conduct does not violate societal norms. Indeed, he is in no position to complain about the fragility of his victim’s psyche; he takes his .victim as he finds her. Unlike the arresting officer in Duvallon, who “saw nothing lewd or lascivious about [the placarded protester’s] conduct,” Ware’s deplorable conduct clearly offends even contemporary norms. Ware has presented nothing to suggest that L.R.’s reaction was other than one within the bounds of reasonableness under the circumstances presented, particularly in light of L.R.’s disabled status. See State v. Kees, 919 So.2d 504, 507 (Fla. 5th DCA 2005) (requiring proof of offensiveness of defendant’s lewd and lascivious conduct in public place “would lead to absurd results.”).
B.
Next, Ware argues that the prior sexual battery of L.R. “could possibly affect her ability to accurately perceive and testify about the events of this alleged offense.” Section 90.608, Florida Statutes (2012), states that any party may attack the credibility of a witness by showing a deficiency in her testimonial capacity or ability or opportunity to perceive, recall, or relate information. But Ware fails to identify any reason to suspect L.R.’s perceptive capabilities were deficient in any way. Her medical affliction does not affect her mental functions. L.R. testified that she had no vision problems that day; indeed, she had an unobstructed and closeup view of Ware’s exposed genitals. We agree with the State’s argument that no reason exists to believe that L.R.’s “ability to see, hear, and otherwise observe the events” at issue is in any way “altered by prior victimization.” Plus, her testimony was the same as that of her daughter, who also witnessed Ware’s genitalia and whose testimony was not alleged to lack credibility-
Finally, we fully agree with the State’s argument that “[e]ven if the victim’s prior sexual assault was marginally relevant, any relevance was outweighed by the inflammatory and prejudicial effect the evidence would have had on the jury.” The alleged value of the jury hearing cross-examination of L.R. about the prior sexual battery is far outweighed by the prejudice *392 it would be apt to cause. Ware’s argument is based to some degree on the old-school, common law view — now abandoned — that evidence of a woman’s prior sexual history was relevant to her character for truthfulness.[4] As a victim of sexual battery (versus simply being sexually active), L.R. is far removed from the applicability of even the common law view. The trial court correctly excluded cross-examination of L.R. on the sexual battery because its probative value would be substantially outweighed by the danger of unfair prejudice or confusion of issues. § 90.408, Fla. Stat. (2012). On this record, allowing cross-examination would have served no purpose other than harassment; and the wisdom of such a strategy is not apparent.
III.
In conclusion, the trial court did not err in prohibiting cross-examination of L.R. about the prior sexual battery. Accordingly, we AFFIRM.
WOLF and OSTERHAUS, JJ., concur.

. " 'Lewd or lascivious exhibition in the presence of an elderly person or disabled person’ occurs when a person, in the presence of an elderly person or disabled person: 1. Intentionally masturbates; 2. Intentionally exposes his or her genitals in a lewd or lascivious manner; or 3. Intentionally commits any other lewd or lascivious act that does not involve actual physical or sexual contact with the elderly person or disabled person, including but not limited to, sadomasochistic abuse, sexual bestiality, or the simulation of any act involving sexual activity, when the person knows or reasonably should know that the elderly person or disabled person either lacks the capacity to consent or fails to give consent to having such act committed in his or her presence.” § 825.1025, Fla. Stat. (2013).

. "It is unlawful to expose or exhibit one’s sexual organs in public or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or to be naked in public except in any place provided or set apart for that purpose.” § 800.03, Fla. Stat. (2013).

. Ware claims on appeal that the trial court did not even allow a proffer of L.R.’s prior sexual battery, but his trial counsel did make a proffer sufficient to apprise the trial court of the substance of Ware's intended cross-examination.

. The common law view has been discredited, and is now displaced by various rules and statutes. See, e.g., Fed. R. Evid. 412; § 794.022, Fla. Stat. (2013); Charles W. Eh-rhardt, Evidence, § 404.7 (2013); see generally Rebekah Smith, Protecting the Victim: Rape and Sexual Harassment Shields Under Maine and Federal Law, 49 Me. L. Rev. 443, 454 (1997) ("Empirical research suggested that a woman’s sexual history was unrelated to her propensity to lie on the witness stand. Critics decried the defendant's use of the victim’s sexual past as a harassment device during cross-examination of the victim as outrageous and unacceptable. Unnecessarily vicious and humiliating cross-examination ‘resulted in nothing less than character-assassination in open court.’ Consequently, rules of evidence were proposed to protect victims from harassment on the stand and to limit the introduction of evidence of the victim’s sexual history.”).