619 So.2d 418 (1993)
Quarry JONES, Appellant,
v.
STATE of Florida, Appellee.
STATE of Florida, Appellant,
v.
Erik RODRIGUEZ and Steven Williams, Appellees.
Nos. 92-134, 92-1876.
District Court of Appeal of Florida, Fifth District.
June 4, 1993.
James B. Gibson, Public Defender and Lyle Hitchens, Asst. Public Defender, Daytona Beach, for appellant in No. 92-134.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee in No. 92-134.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan Fowler, Asst. Atty. Gen., *419 West Palm Beach, for appellant in No. 92-1876.
Billy H. Nolas, Public Defender, and Julie D. Naylor, Asst. Public Defender, Ocala, for appellees in No. 92-1876.
David A. Henson of Kirkconnell, Lindsey & Snure, Winter Park, for amicus FACDL in No. 92-1876.
HARRIS, Judge.
We have for review the companion appeals in the cases of State v. Erik Rodriguez and Steven Williams (No. 92-1876) in which section 800.04, Florida Statutes (1991) was held unconstitutional and Quarry Jones v. State, (No. 92-134), in which the validity of the statute was upheld and Jones was sentenced to four and a half years in prison for violating it.

ISSUE
The issue involved in these companion cases is whether the expansive constitutional right of privacy of minors our supreme court announced in In re T.W., 551 So.2d 1186 (Fla. 1989), renders unconstitutional that portion of section 800.04, which provides that consent is not a defense to a prosecution for sexual activity with a minor under sixteen.

STANDING
The State urges that the young men involved in these appeals lack standing to assert the young women's rights to privacy even if such rights exist. We reject this argument. The State relies on State v. Phillips, 575 So.2d 1313 (Fla. 4th DCA 1991), rev. denied, 589 So.2d 292 (Fla. 1991). We disagree with the analysis of Phillips. We find that the boyfriend who assists the minor child in achieving her constitutional right to engage in sexual activity (if, in fact, she has such a right) has the same standing as the doctor who assists the minor in obtaining her constitutionally protected right to have an abortion. Suppose, for example, the State, while recognizing the minor's right to an abortion, made it a second degree felony for any doctor to perform an abortion on a minor without parental consent. Would the State urge that the doctor could not assert as a defense the minor's right to an abortion? We think not. And even if the State took such a position, we doubt any court would lend it credence.
We hold, therefore, that the young men's position is similar to the appellants' in Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and that they have standing to raise the alleged constitutional rights of their sexual partners as a defense to their prosecution.

FACTS
The relevant facts in the Rodriguez and Williams prosecutions are without dispute. Two young women, ages 14, had consensual sex with young men, ages 19 and 20. Neither of the "victims" wanted to prosecute;[1] the charges were initiated by family members (mother or sister). At least one of the young women desired (intended) to get pregnant and have a child. In the Jones prosecution, the defendant was denied the opportunity to raise consent as a defense.

MERITS
Our oath and the law require that we apply the law as determined by the Florida Supreme Court. This obligation is not based on the premise that we agree with the supreme court's opinion. Rather, it is based on the concept of precedent and the relative standing of the courts in the judicial hierarchy. This obligation not only requires us to apply such law in cases with similar facts or issues specifically covered by the supreme court's opinion, but also to give such effect to its opinion on related issues as appears intended by the supreme court. However, particularly because the supreme court must ultimately decide this *420 issue and will have that opportunity to do so through our certification, we are at liberty to consider the possibility that the different policy concerns raised in this case might cause the supreme court to recede from, or at least clarify, the broad rule of law announced in T.W.
If this case involved abortion, the decision would be simple. The supreme court has ruled that a minor (of any age if such minor can become pregnant) has the constitutional right to an abortion without the parents' knowledge or consent. But this case does not involve abortion. Instead, the related issue before us is whether a minor under sixteen years of age has a right, protected by Florida's constitutional right of privacy, to engage in consensual sex. While this issue is not identical to the abortion issue before the court in In re T.W., we recognize that although it may be distinguished, it may be a distinction without a difference. That is why we certify the issue to the supreme court.
If the supreme court's opinion is vague, we are free to search for its intent. While the decision in T.W. regarding a minor's right to have an abortion is not at all vague, there are different policy concerns raised by the related issue of a minor's right to engage in consensual sex. If the decision in T.W. does not apply, it must be because of these differing policy concerns.[2] In that case and in sweeping language, the supreme court mandated that Florida's constitutional right of privacy be construed very broadly and that any constitutional rights of adults must also apply to minors unless the State meets a stringent burden of establishing a compelling state interest to restrict such constitutional rights:
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
In re T.W. at 1191-92, quoting Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla. 1985).
* * * * * *
The next question to be addressed is whether this freedom of choice concerning abortion extends to minors. We conclude that it does, based on the unambiguous language of the amendment: The right of privacy extends to "[e]very natural person." Minors are natural persons in the eyes of the law and "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, ... possess constitutional rights." ...
Common sense dictates that a minor's rights are not absolute; in order to overcome these constitutional rights, a statute must survive the stringent test announced in Winfield: The state must *421 prove that the statute furthers a compelling state interest through the least intrusive means.
In re T.W., 551 So.2d at 1193.
The first question, then, is whether adults have a constitutional right to engage in sex without marriage. A few short years ago, the answer would have been different. Fornication was statutorily prohibited in Florida until 1979, when our supreme court ruled the statute unconstitutional. This holding was based on equal protection rather than right of privacy concerns. Purvis v. State, 377 So.2d 674 (Fla. 1979). The legislature then repealed the fornication statute in 1983. Section 798.03, Florida Statutes, repealed by section 17, chapter 83-214. Despite the Purvis court's reliance on equal protection, it appears now that the right of privacy precludes the State from restricting an unmarried adult's right to engage in consensual sex.
If, then, a sixteen-year-old girl has a right to engage in consensual sex,[3] what compelling state interest can deny this "right" to a fifteen, fourteen or thirteen-year-old girl? The State's only response to this question is one similar to that considered by the United States Supreme Court in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797, rehearing denied, 444 U.S. 887, 100 S.Ct. 185, 62 L.Ed.2d 121 (1979). That is, the State's compelling interest arises from
... the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.
Bellotti, 443 U.S. at 634, 99 S.Ct. at 3043.[4]
We are impressed with this argument. We agree with the Bellotti court that "during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them," (443 U.S. at 635, 99 S.Ct. at 3044) and that the role of parents in "teaching, guiding, and inspiring by precept and example is essential to the growth of young people into mature, socially responsible citizens." 443 U.S. at 638, 99 S.Ct. at 3045.
The Florida Supreme Court, in In re T.W., held that these considerations are relevant only under the relaxed standard of "significant state interest" applied by the United States Supreme Court to the United States Constitution. While our supreme court agreed that protecting minors and preserving family unity were "worthy objectives," the court held that they were not sufficiently compelling, under our more stringent "compelling state interest" standard, to override Florida's privacy amendment insofar as a minor's right to an abortion is concerned. In light of this holding, the State's similar argument in the case before us seems already to have been rejected by our supreme court in In re T.W. Specifically, the T.W. court expressly held that the age or maturity of the minor to determine "the most profound and intimate" question concerning one's body is immaterial in the constitutional sense under our standard of review.
We, in good faith, suggest that the differing policy concerns accompanying the issue before us will result in the supreme court's modification of the apparently conflicting broad language in T.W.[5] There was a finality and an urgency in the decision *422 facing the minor in T.W. To choose abortion, at least for that pregnancy, was a final solution. To delay the decision for any substantial period of time would deny the opportunity to ever make the decision and, for that pregnancy, the result would be equally as final. Further, by subjecting the minor to consultation with (and approval by) her parents and, to a lesser degree, the alternative judicial proceedings, the minor's ability to make this all important, highly personal decision would be compromised. Future events might make either decision (to abort or not abort) wise or folly. But our supreme court held in T.W. that, in any event, the young woman should be able to say that it was her decision.
In contrast, the decision whether or not to have consensual sex is neither final nor urgent. Parents (and the state) should be permitted to urge (and enforce) restraint in an to attempt to ensure that the onset of sexual activity is coupled with the maturity to cope with the consequences. Hopefully this adult and government involvement will reduce the number of young women forced to face the dilemma of choosing between abortion and pregnancy. We recognize that Florida's age of consent, under modern morality, may be too high. But this, in the first analysis, is the legislature's prerogative.
Because we believe that the minor's right to consensual sex is not substantially burdened by requiring a delayed exercise of such right (similar to voting, drinking and driving), we uphold the constitutionality of section 800.04. We, therefore, affirm the conviction in Jones v. State and reverse the decisions in State v. Rodriguez and State v. Williams and remand for further action consistent with this opinion.
Because of the importance of this issue beyond the boundaries of this court and because we may have read less into In re T.W. than intended by the supreme court, we certify the issue of these appeals to the Florida Supreme Court as one of exceptional importance.
COBB, J., concurs specially in result, with opinion.
W. SHARP, J., concurs specially in result, with opinion.
COBB, Judge, concurring specially.
Despite the expansive language employed by the majority opinion in In re T.W., 551 So.2d 1186 (Fla. 1989), I do not believe that the Florida Supreme Court intended to invalidate section 800.04, Florida Statutes. The "compelling state interest" in T.W. was the fact that four members of the Florida Supreme Court favored a policy of readily accessible abortions for pregnant minors. There is no such philosophical imperative in regard to the encouragement of sexual activity by minors under the age of 16. Determination of the age of consent is a matter for the legislature, not the courts. It is also my view that the electorate of Florida, in voting for the privacy amendment[1] in 1980, had not the faintest idea it was voting to abolish the crime of statutory rape in this state.
Accordingly, I concur with the majority result and with its conclusion that the defendants *423 in these cases have standing to raise the constitutional issue. I also concur with certification.
W. SHARP, Judge, concurring specially,
Since the majority opinion finds the defendants have standing to raise the underage persons' claimed constitutional privacy rights, I concur that the issue of whether In re T.W., 551 So.2d 1186 (Fla. 1989) invalidates prosecutions of persons pursuant to section 800.04, should be certified to the Florida Supreme Court as a question of great public importance.[1] However, I disagree with the majority opinion that these defendants have standing to raise the underage minors' claimed constitutional rights to have sex. I would prefer to dispose of the Williams and Rodriguez cases by holding they lack such standing,[2] and in the Jones case, that this constitutional issue was not timely raised or presented to the trial judge.[3]
In re T.W., contains broad language which gives some credence to the appellants' positions that since pregnant minors cannot be prohibited from consenting to have an abortion, it follows they cannot be legally prohibited from consenting to have sex. The court said in T.W., that the right to procreate, and by implication, the right to have sex for fun, falls within Florida's constitutional right of privacy protection, Article I, section 23, as a "fundamental right." It also said such fundamental rights extend to minors as well as to adults.
In order to be able to constitutionally impinge by statute on the free exercise of such a fundamental right, the court said in T.W., that the state must show it has a "compelling state interest" and that such interest is furthered by the challenged statute. It found no compelling state interest in the statute's requirement that a minor obtain parental or court-substituted consent prior to having an abortion. This was partially because the court found the minor's health and well being were not furthered by the statute. Compliance with the statute could have prevented a minor from having an abortion early in the pregnancy when such procedure was least risky for the minor's health, and far less risky than giving birth.
Further, the court said in T.W., that the Legislature had taken inconsistent positions on the issue of requiring parental consent for decisions a pregnant minor was allowed to make for her own medical care while pregnant and that of her child, after its birth. In those contexts, which could be serious and life-threatening, the minor was empowered to make decisions regarding medical treatment without her parent's consent. The court concluded, based in such inconsistency, "[t]he selective approach employed by the Legislature [regarding requiring parental consent] evidences the limited nature of the ... interest being furthered by these provisions." T.W. at 1195, citing Ivey v. Bacardi Imports Co., Inc., 541 So.2d 1129, 1139 (Fla. 1989).
In contrast, Florida has long adhered to a policy of protecting minors from sexual exploitation and abuse. The roots of this policy can be found in an early English statute making it a felony to have "carnal knowledge" of a woman child under ten years of age. The statute was old enough to be accepted in the United States as part of the common law. Wharton's Criminal Law Vol. II § 291 (4th ed. 1978). Such laws, known as "statutory rape," exist in every state. Although the ages of the protected child may vary, from state to state, and for the degree of crime within a state, all have in common the fact that the consent of the underage child is not relevant as a defense.
*424 In Florida, the first statutory rape law dates back to 1892 (section 2598):
Whoever ravishes and carnally knows a female of the age of 10 years or more, by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of 10 years, shall be punished by death... .
A version of this statute was in effect in Florida until the sexual battery statute was passed in 1975.[4] Section 794.011 makes it a felony of varying degrees of seriousness to commit a sexual battery on a person under the age of twelve, for which consent is no defense. Section 794.05 similarly obviates consent as a defense if the child is under eighteen, unmarried, and previously was chaste.
In 1943, the Legislature broadened its policy of protecting minors by passing section 800.04, the statute involved in these cases. It prohibits a variety of lewd and lascivious conduct with a child under the age of sixteen, or in the child's presence, including actual sexual intercourse, as occurred in these cases. Violations of section 800.04 are second degree felonies rather than possibly first degree or life felonies pursuant to section 794.011. Section 800.04 also provides that the child's lack of chastity and the child's consent are not defenses to charges brought under section 800.04. Since all of the children involved in these cases are over the age of twelve, apparently were not previously chaste, and they consented to the sexual intercourse, charges had to be brought under section 800.04 rather than section 794.05 or 794.011.
Also demonstrating Florida's policy of expanded protection of minors from harmful explicit sexual conduct are other statutes which deal with a variety of subjects. See, e.g., section 847.013 (exposing minors to obscene motion pictures and shows); section 847.0133 (protection of minors; prohibition of certain acts in connection with obscenity; penalty); section 847.0145 (selling or buying minors to engage in sexually explicit conduct for the purpose of visually depicting it). Such statutes illustrate a well-established, consistent policy in Florida to increase the protection of its children from premature sexual activity and exploitation. The mechanism chosen by the Legislature to enforce this policy is to make it a crime to engage in the prohibited sexual conduct with a child without regard to the child's or even the child's parents' consent. The basic assumption behind such laws is that consent by the child counts for nothing because the child or underage person must be protected from his or her own lack of wisdom and good judgment.
I agree with Judge Harris that the State of Florida has a compelling interest in protecting its children from sexual activity and exploitation before their minds and bodies have sufficiently matured to make it appropriate, safe and healthy for them. See New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); Ferris v. Santa Clara County, 891 F.2d 715 (9th Cir.1989), cert. denied, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990); Ravin v. State, 537 P.2d 494 (Alaska 1975). This compelling state interest has been long adhered to in Florida, and has been consistently broadened in scope. Section 800.04 and other Florida statutes evidence no inconsistent or limited loyalty to the social policy of protecting children from sexual activity and abuse.
Thus, in my view, the defendants in these cases have failed to demonstrate any constitutional invalidity with section 800.04 on its face or as applied. Accordingly, I agree the Jones case should be affirmed and the Rodriquez and Williams cases should be reversed.
NOTES
[1] During the proceedings, the young women sat in the courtroom holding hands with the accused young men.
[2] We do not feel that we can merely expand the holding in Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992), in which the Florida Supreme Court recognized a "compelling state interest" in protecting minors from "sexual exploitation" under section 827.071, Florida Statutes. That case involved a father taking explicit photographs of and videotaping his 12-year-old naked daughter. It has been urged that we could uphold the statute by saying that anytime a minor is seduced, sexual exploitation has occurred. This position, however, seems disingenuous.

The statute involved in the cases before us, section 800.04, is gender neutral, and there is no age requirement for the violator of the act. Therefore, if two fifteen-year-olds engage in sex, it is extremely difficult to determine which is the victim and which is the second degree felon. Even if the perpetrator is sixteen (or even twenty) and the "victim" is a sexually active, mature minor, the question of who "sexually exploited" whom still may not be readily apparent.
[3] We reach this conclusion because the statute in question only regulates the behavior of persons under sixteen. Therefore, for purposes of section 800.04, persons sixteen and older are adults.
[4] The State urges us to follow the opinion of the Supreme Court of Alaska in Anderson v. State, 562 P.2d 351 (Alaska 1977), in which that court acknowledged that the State may exercise control over the sexual conduct of children beyond the scope of its authority to control adults. The State is preaching to the choir. However, we cannot adopt a decision from another state in conflict with the decision of our supreme court. In Anderson, the court never mentioned what state interest standard (compelling or significant) Alaska had adopted.
[5] The United States Supreme Court in Bellotti discussed the role of the family (and state) in restricting certain decisions which can be made by minors:

Properly understood, then, the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter. Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances for the full growth and maturity that make eventual participation in a free society meaningful and rewarding.
* * * * * *
The pregnant minor's options are much different from those facing a minor in other situations, such as deciding whether to marry. A minor not permitted to marry before the age of majority is required simply to postpone her decision ... a pregnant adolescent, however, cannot preserve for long the possibility of aborting ...[.]
Yet, an abortion may not be the best choice for the minor. The circumstances in which the issue arises will vary widely. In a given case, alternatives to abortion, such as marriage to the father of the child, arranging for its adoption, or assuming the responsibilities of motherhood with the assured support of the family may be feasible and relevant to the minor's best interest. Nonetheless, the abortion decision is one that simply cannot be postponed, or it will be made by default with far-reaching consequences.
[1] Art. I, § 23, Fla. Const.
[1] Fla.R.App.P. 9.030(a)(2)(B)(i).
[2] See State v. Phillips, 575 So.2d 1313 (Fla. 4th DCA), rev. denied, 589 So.2d 292 (Fla. 1991); Ferris v. Santa Clara County, 891 F.2d 715 (9th Cir.1989), cert. denied, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990).
[3] Constitutional questions may, or may not be, fundamental error. If not fundamental error, they must be objected to or they are waived. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
[4] Chapter 794, Florida Statutes (1975).