705 So.2d 1381 (1998)
J.A.S., a child, and J.L.R., a child, Petitioners,
v.
STATE of Florida, Respondent.
No. 89768.
Supreme Court of Florida.
February 5, 1998.
*1382 James B. Gibson, Public Defender and Kenneth Witts, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, for Petitioner.
Robert A. Butterworth, Attorney General and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Respondent.
ANSTEAD, Justice.
We have for review the decision in State v. J.A.S., 686 So.2d 1366 (Fla. 5th DCA 1997). We accepted jurisdiction to answer the following question certified to be of great public importance:
WHETHER THE POTENTIAL PENALTY FOR VIOLATION OF SECTION 800.04, FLORIDA STATUTES, BY A MINOR UNDER THE AGE OF SIXTEEN FURTHERS A COMPELLING STATE INTEREST THROUGH THE LEAST INTRUSIVE MEANS?
Id. at 1370. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the affirmative, approve the decision under review, and hold that under the factual circumstances presented herein section 800.04, Florida Statutes (1993), furthers the State's compelling interest in protecting minors from harmful sexual conduct through the least intrusive means.

MATERIAL FACTS AND PROCEDURE BELOW[1]
The trial court dismissed statutory rape charges against two fifteen-year-old boys, J.A.S. and J.L.R., who engaged in "consensual" sex with two twelve-year-old girls. One of the boys had sixty-five prior referrals to HRS with thirty-five adjudications. He was on community control when charged and had previously engaged in sex with the victim's thirteen-year-old sister. The other boy had eight prior juvenile referrals and four adjudications. Id. at 1368. The trial judge found section 800.04, Florida Statutes (1993),[2] unconstitutional as applied to the boys because it violated their rights to privacy and equal protection, and the harsh adult sanctions would constitute cruel and unusual punishments if the boys were charged as adults in a felony criminal prosecution.[3]
The district court vacated the dismissal. First, the court found that the trial judge inappropriately relied on his own personal experience as a juvenile judge to conclude that "the boys are always charged by the state" whenever sexual misconduct is alleged between juveniles. The court stated that this was an inadequate evidentiary basis to support such a claim of discrimination and that a prosecutor's absolute discretion to charge only some offenders "is not a ground for a claim of denial of equal protection." Second, the district court found that the potential penalties for juveniles if sentenced as adults was not the proper test in determining whether cruel and unusual punishment was imposed.[4]
*1383 Finally, the district court considered whether application of the statute invaded the boys' privacy rights. After analyzing the legislative intent behind the statute and our opinion in B.B. v. State, 659 So.2d 256 (Fla. 1995), the district court concluded that "[w]hatever rights of privacy a minor under sixteen may have, surely it does not extend to an absolute and unregulated right to engage in recreational sex with a minor also under that age." 686 So.2d at 1369. Accordingly, the court refused to "eliminate by judicial fiat whatever restraint section 800.04 provides in prohibiting sexual activity by minors in furtherance of the State's compelling interest in preventing such conduct and its consequences." Id.

LAW AND ANALYSIS
This case presents policy questions similar to the ones we addressed in B.B. v. State, 659 So.2d 256 (Fla.1995), and Jones v. State, 640 So.2d 1084 (Fla.1994).
In Jones, we upheld the constitutionality of the specific statute at issue in this case, section 800.04.[5] There, the issue was whether Florida's statutory rape law as defined in section 800.04 was constitutional in criminalizing consensual sexual intercourse by an adult with a person under the age of sixteen. Id. at 1086. Jones involved separate cases, wherein three adult males, ages eighteen, nineteen, and twenty, were charged with violating the statute's prohibition against sexual intercourse with "any child under the age of 16 years." In each case the female victim consented to sexual intercourse with the defendant. Jones, the eighteen-year-old, was convicted and sentenced to four and one-half years' imprisonment. However, in separate cases involving the other defendants, a different trial judge dismissed the charges, declared section 800.04 unconstitutional as applied and held that the statute constituted an unreasonable restriction on the consenting victims' right of privacy. The Fifth District reversed on the constitutional issue, and certified the constitutional privacy issue to this Court as one of great public importance.
On review in Jones we approved the district court's decision, noting that the legislature had enacted numerous statutes to protect minors from harmful sexual conduct, and that those laws clearly invoke a policy that "any type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents... [therefore] society has a compelling interest in intervening to stop such misconduct." Id. at 1086 (quoting Schmitt v. State, 590 So.2d 404, 410-11 (Fla.1991)). Emphasizing the primacy of the child protection policies implicit in the laws, we determined that "neither the level of intimacy nor the degree of harm are relevant when an adult and a child under the age of sixteen engage in sexual intercourse." Id. We noted that neither the child's maturity or lack of chastity could override these concerns because "sexual activity with a child opens the door to sexual exploitation, physical harm, and sometimes psychological damage." Jones, 640 So.2d at 1086. We also refused to extend a minor's privacy rights involving abortion as confirmed in In re T.W., 551 So.2d 1186 (Fla.1989), to include a right to initiate consensual sexual relationships with adults. We noted that "T.W. did not transform a minor into an adult for all purposes." Finally, we concluded that whatever the extent of a minor's privacy rights, those rights "do not vitiate the legislature's efforts and authority to protect [minors] from conduct of others." Jones, 640 So.2d at 1087.
Justice Kogan wrote separately in Jones, noting that our decision on minors' abortion rights in In re T.W., 551 So.2d 1186 (Fla. 1989), "did not directly or indirectly address the propriety of teens engaging in sexual activities." Id. at 1087 n. 5. He opined that "sex in early adolescence is a dangerous folly *1384 that the state clearly does not condone; but once a girl is pregnant, very different issues and dangers of a completely different magnitude arise. T.W., in sum, does not create a right for young adolescents to `consent' to sex." Id. Justice Kogan also feared that "an uncritical acceptance of the notion of youths `consenting' to sexual activity will merely create a convenient smoke screen for a predatory exploitation of children and young adolescents." Id. at 1088. As evidence of the genuineness of these concerns, Justice Kogan cited copious social science research detailing the resulting psychological costs to the exploited individual, and the increase in criminal activity connected to the childhood sexual abuse of the perpetrators, thereby affecting society as a whole. Id. at 1088-89.

B.B. V. STATE
Subsequently, in B.B. v. State, 659 So.2d 256 (Fla.1995), upon review of a certified question,[6] we found section 794.05, Florida Statutes (1991),[7] unconstitutional as applied to the unique facts of that case, including the fact that both the charged defendant and the alleged consenting victim were aged sixteen. We cast the issue in B.B. as "whether a minor who engages in `unlawful' carnal intercourse with an unmarried minor of previous chaste character can be adjudicated delinquent of a felony of the second degree in light of the minor's right to privacy guaranteed by the Florida Constitution." 659 So.2d at 258. After noting that other intimate acts fall within the zone of privacy recognized by the United States Constitution, and in light of our decision in T.W. finding abortion rights to be within a minor's privacy interest, we concluded that "Florida's clear constitutional mandate in favor of privacy is implicated in B.B., a sixteen-year-old, engaging in carnal intercourse." Id. at 259. Thereafter, we applied the "stringent test"[8] to the statute, the standard whereby the State "must prove that the statute furthers a compelling state interest through the least intrusive means." Id. at 259 (quoting T.W., 551 So.2d at 1193), and found that the State's interest fell short of that measure in its attempt to punish one sixteen-year-old for consenting to having sex with another sixteen-year-old.
We distinguished B.B. from Jones by pointing out material distinctions between both the statutes, the issues under review, and especially the specific factual circumstances involved of two consenting sixteen-year-olds. We specifically distinguished the State's interest that we found compelling in Jones. We noted that Jones implicated an adult-minor situation where "the crux of the State's interest ... [was] the prevention of exploitation of the minor by the adult." Id. In contrast, "in this minor-minor situation, the crux of the State's interest is in protecting the minor from the sexual activity itself for reasons of health and quality of life." Id.
We also explored the ancient roots of the statute in an attempt to determine "why the statute protected only unmarried minors who were chaste." Id. Finally, after agreeing with a Fourth District opinion[9] that the statute's apparent purpose was "to protect minors from sex acts imposed by adults," we held that section 794.05 was unconstitutional as applied to sixteen-year-old B.B., since in *1385 his case it was "being used as a weapon to adjudicate a minor delinquent," rather than "being utilized as a shield to protect a minor." Id. at 260.[10] Hence, we held, in essence, that the State could not single out, solely on the basis of chastity, one of two consenting sixteen-year-old minors for criminal prosecution.[11]

POLICY CHOICES
In the present case, in considering an "as applied" constitutional challenge, we are again faced with difficult, competing policy choices, in a situation involving minors as defendants and victims. In B.B., we concluded that the purpose of section 794.05(1) was "to protect minors from sex acts imposed by adults." 659 So.2d at 260 (quoting Victor v. State, 566 So.2d 354, 356 (Fla. 4th DCA 1990)), and, accordingly, we found the statute unconstitutional as applied in singling out one of two consenting sixteen-year-olds because it was "not being utilized as a shield to protect a minor." Id. We find B.B. clearly distinguishable because while both "defendant" and "victim" were sixteen in that case, here we have two fifteen year-old boys engaging in sexual activity with two twelve-year-old girls.[12] As J.A.S.'s counsel acknowledged at oral argument, and we reaffirm here, twelve-year-old children are entitled to considerable protection by the State, even when some of them resist its extension to them.
Fundamentally, our inquiry here involves weighing the State's legitimate interest in either regulating or forbidding the challenged conduct of the minors involved herein against the minors' privacy rights under article I, section 23 of the Florida Constitution.[13] Consistent with that approach, and with our prior analysis in Jones upholding the same statute, we find that as to the "as applied" challenge here, the scales clearly tip in favor of the State's compelling interest in protecting children from harmful sexual conduct. See Jones, 640 So.2d at 1086 ("The State has the prerogative to safeguard its citizens, particularly children, from potential harm when such harm outweighs the interests of the individual.") (citing Griffin v. State, 396 So.2d 152 (Fla.1981)).
Our conclusion is consistent with our particularized approach to similar privacy issues in B.B. and in Jones. We recognized in Jones that the Florida Legislature, "[a]s evidenced by the number and breadth of the statutes concerning minors and sexual exploitation... has established an unquestionably strong policy interest in protecting minors from harmful sexual conduct." 640 So.2d at 1085. Moreover, "[the] rights of privacy that *1386 have been granted to minors do not vitiate the legislature's efforts and authority to protect [them] from conduct of others." Id. at 1087. Although applied in the adult-minor context, our reasoning in Jones is equally applicable here in recognizing the State's compelling interest in protecting twelve-year-olds from older teenagers and from their own immaturity in choosing to participate in harmful activity. 640 So.2d at 1087 (finding that the State "has an obligation and a compelling interest in protecting children from `sexual activity and exploitation before their minds and bodies have sufficiently matured to make it appropriate, safe, and healthy for them'") (quoting Jones v. State, 619 So.2d 418, 424 (Fla. 5th DCA 1993) (Sharp, J., concurring specially)).
On the other hand, we reasoned in B.B. that the statute was "not being utilized as a shield to protect a minor, but rather, it [was] being used as a weapon to adjudicate a minor delinquent." B.B., 659 So.2d at 260. In contrast, under the circumstances presented here, we conclude that section 800.04 is being primarily utilized as a shield to protect the twelve-year-old girls, rather than a weapon to arbitrarily adjudicate the fifteen-year-old boys as delinquents. While we agree that the trial court, based upon its actual experience, has identified a potential legitimate concern in the observation that "the boys are always charged by the state" when sexual misconduct is alleged involving minors, we do not find that concern implicated or determinative here. As already repeatedly noted, the facts here are clearly distinguishable from those in B.B. where such a concern may have merited further exploration.
Further, in accord with our reasoning in T.W., 551 So.2d at 1193, that "a minor's rights are not absolute," we again decline to find that a minor has an open-ended privacy right in carnal intercourse with another minor, of any age, that shields the minor from adjudication as a delinquent. Counterposed against respect for the privacy rights of "[e]very natural person," including minors, is the legislature's legitimate concern with the social problems engendered by minors' sexual activity. On that subject, we agree, for example, that the statute evinces a policy that "sex in early adolescence is a dangerous folly that the state clearly does not condone." Jones, 640 So.2d at 1087 n. 5 (Kogan, J., concurring).[14]
We conclude that whatever privacy interest a fifteen-year-old minor has in carnal intercourse is clearly outweighed by the State's interest in protecting twelve-year-old children from harmful sexual conduct, irrespective of whether the twelve-year-old "consented" to the sexual activity. We simply cannot ignore the State's weighty interest in protecting the twelve-year-old girls from harmful sexual conduct "for reasons of health and quality of life," B.B., 659 So.2d at 259, and from possible sexual exploitation by the older minors. See J.A.S., 686 So.2d at 1369 (reasoning that minors under sixteen have no unfettered right to engage in recreational sex with others under sixteen because the "costs and risks to society and the children involved are far too great").
Therefore, we conclude that section 800.04, as applied herein, furthers the compelling interest of the State in the health and welfare of its children, through the least intrusive means, by prohibiting such conduct and attaching reasonable sanctions through the rehabilitative juvenile justice system.[15]See *1387 P.W.G. v. State, 702 So.2d 488, 491 (Fla.1997) ("Given the different goals of the juvenile delinquency and the adult criminal systems, and the former's emphasis on rehabilitation as the principal means by which to achieve the goal of preventing delinquent children from becoming adult offenders, we believe that it is constitutionally permissible for the trial court to impose whatever treatment plan it concludes is most likely to be effective for a particular child, as long as that plan does not pose a significant threat to the health or well-being of the child."). While education and counseling are obvious means of addressing the State's concerns, we do not find it unreasonable for the State to include the invocation of juvenile sanctions in particular instances such as the ones presented here as an additional means of protecting children. Stated another way, the more compelling the interest under the particular circumstances, the more leeway the State will be afforded.
We recognize that it would simplify privacy analysis if we could fashion a precise equation by which all could easily determine which interest should prevail in whatever context a privacy right is asserted. In cases like this, all interested parties legitimately seek bright-line rules in determining whether the disputed conduct is sanctionable in the juvenile or criminal justice systems, or whether the activity falls within the constitutionally-protected zone of privacy established for certain forms of intimate human conduct. However, the human experience is not so easily categorized or quantified and no single formula can be crafted for deciding issues which implicate the most personal and intimate forms of conduct and privacy, especially where children are involved. If we blinded ourselves to the unique facts of each case, we would render decisions in a vacuum with no thought to the serious consequences of our decisions for the affected parties and society in general.

CONCLUSION
In summary, we hold that section 800.04, Florida Statutes (1993), as applied in the circumstances presented here, furthers the State's compelling interest in protecting minors from harmful sexual conduct through the least intrusive means. Accordingly, we answer the certified question in the affirmative and, in accord with the reasoning set out above, approve the Fifth District's decision.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The following facts are taken from the district court's opinion. J.A.S., 686 So.2d at 1367-70.
[2] The trial court specifically found subsection (4) unconstitutional as applied. The first three subsections of section 800.04 deal with sexual assault or sexual battery. Subsection (4) provides:

A person who:
....
(4) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years, without committing the crime of sexual battery, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
[3] The trial court then certified a question of great public importance to that effect to the Fifth District. The district court declined to answer the question, finding no provision for a certified question from a trial court and determining that the equal protection and cruel and unusual punishment issues were premature.
[4] As to the severity of the sanction attached, the court also noted that the "legislature seemed to be content with the potential punishment involved, as reflected by its unwillingness to change the statutory prohibitions and penalties... during their 1996 session, although fully acknowledging that it was aware of the problem." 686 So.2d at 1369.
[5] Although both cases construe section 800.04, Jones addressed the 1991 statute, while J.A.S. interpreted the 1993 statute. There are slight differences between the statutes, although none are material. Specifically, "Any person" is now "A person"; "makes an assault upon any child" is now "assaults any child"; and a final sentence was added in 1993: "A mother's breastfeeding of her baby does not under any circumstance violate this section." Ch. 93-4, § 5 Laws of Fla. (1993).
[6] "Whether Florida's privacy amendment, Article I, section 23 of the Florida Constitution, renders section 794.05, Florida Statutes (1991), unconstitutional as it pertains to a minor's consensual sexual activity?" Id. at 257. The trial court granted B.B.'s motion to declare the statute unconstitutional, relying on T.W. for the proposition that B.B.'s privacy rights under the Florida Constitution outweighed the State's interest in protecting the other consenting sixteen-year-old from her own consensual sexual conduct. Id. at 258.
[7] Section 794.05 provided that:

(1) Any person who has unlawful sexual intercourse with any unmarried person, of previous chaste character, who at the time of such intercourse is under the age of 18 years, shall be guilty of a felony of the second degree....
(2) It shall not be a defense to a prosecution under this section that the prosecuting witness was not of previous chaste character at the time of the act when the lack of previous chaste character in the prosecuting witness was caused solely by previous intercourse between the defendant and the prosecuting witness.
[8] This test was first established in Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985).
[9] Victor v. State, 566 So.2d 354, 356 (Fla. 4th DCA 1990).
[10] As in Jones, Justice Kogan filed a separate concurrence and decried the selectivity of section 794.05, writing that this "singularly odd state of affairs indicates that the real objective of this statute is not to protect children as a class, but to prevent the loss of chastity of those not already `despoiled.'" Id. Justice Kogan found section 794.05 "inherently questionable" since it "purports to grant special status to a favored group of children over all others," thus violating the fundamental legal principle that "[l]aws should protect everyone, not merely a favored subgroup." Id. at 261. Justice Kogan also urged the legislature to either modernize section 794.05 or at least "decide if it is genuinely necessary in light of the variety of other statutes more than adequately protecting children from sexual predation." Id.
[11] We note that in apparent response to our decision in B.B., the legislature completely revised section 794.05 in 1996. Ch. 96-409, § 1, Laws of Fla. The most significant change is reflected in subsection (1), which provides that:

A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree..... As used in this section, "sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; however, sexual activity does not include an act done for a bona fide medical purpose.
§ 794.05, Fla. Stat. (1997). Hence, section 794.05 no longer exists in the same form we considered in B.B.
[12] Neither are we faced here with a statute that selectively protects only a favored sub-group of minors such as was decried by Justice Kogan in B.B. 659 So.2d at 260-61 (finding inexplicable a statute "that seems to regard unchaste minors as being somehow less deserving of the state's protection than those who are otherwise").
[13] "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law." Art. I, § 23, Fla. Const.
[14] This Court has consistently acknowledged the legitimacy of such a policy. "We do say that if our decision was what should be taught and reasoned to minors, the unequivocal text of our message would be abstinence." B.B., 659 So.2d at 260 (majority opinion). "Persons under the age of eighteen are still considered minors, and as this Court held in Jones, the legislature has a strong policy interest in protecting minors from harmful sexual conduct." Id. at 261-62 (Grimes, C.J., dissenting with Shaw, J., concurring). "The facts of this case make its resolution troublesome... [where] [t]wo persons, both minors, agreed to engage in sexual intercourse." Id. at 262 (Harding, J., dissenting).
[15] In P.W.G. v. State, 702 So.2d 488 (Fla.1997), we adopted the opinion of the First District which in turn relied extensively upon our previous decision in In re C.J.W., 377 So.2d 22, 24 (Fla.1979), wherein we declared:

A child offender, even after being adjudged delinquent, is never held to be a criminal, even if the act would be considered a crime if committed by an adult. The key to this difference in approach lies in the juvenile justice system's ultimate aims. Juveniles are considered to be rehabilitatable. They do not need punishment. Their need lies in the area of treatment.
As J.A.S. notes in his brief, a minor convicted of a second-degree felony (if charged as an adult), potentially faces a maximum fifteen-year prison sentence. However, as counsel conceded at oral argument, such a severe sanction is an impossibility in this case since both minors remain within the juvenile justice system and have not been charged as adults.