733 So.2d 541 (1999)
STATE of Florida, Appellant,
v.
Ronald RIFE, Appellee.
No. 98-38.
District Court of Appeal of Florida, Fifth District.
March 19, 1999.
Order Granting Motion to Certify Question May 28, 1999.
*542 Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Kenneth Witts, Assistant Public Defender, Daytona Beach, for Appellee.
EN BANC
HARRIS, J.
In order to recede from our holding in State v. Smith, 668 So.2d 639 (Fla. 5th DCA 1996), we have elected to consider this case en banc.
The State appeals the downward departure sentence imposed in this case. We affirm. Rife was convicted of three counts of sexual battery on a minor by a person in custodial authority. Rife admits having sex with the seventeen-year-old victim on numerous occasions but contends, and the victim agrees, that the sexual activities were consensual. Further, it appears that the sexual activities with this minor, who moved in with appellant because she had no other place to reside, began before the victim requested, and appellant agreed, that appellant become her guardian. The trial court departed downward finding:
But I'm basing the downward departure based on statutory grounds that the victim, although she was a minor, was a willing participant in this incident. She apparently agreed to it and was in love with you, and at least thought she was in love with you, and fully participated in this incident.
She doesn't have the obligation or the responsibility as a minor to tell you no. Consent is not an issue on the charge. But I am taking that into consideration for the purpose of the downward departure.
Thus, the issue squarely facing us is whether the willing participation of a seventeen-year-old young woman in a statutorily prohibited sexual relationship, although not a defense to the crime, can be considered by the judge in determining the appropriate sentence. We agree that section 921.0026, Florida Statutes, gives the trial judge the discretion to mitigate under appropriate circumstances, that the circumstances found by the trial court to exist herein are supported by the record and are appropriate, and affirm recognizing our contrary holding in State v. Smith at page 644:
Given this policy [the obligation of the State to protect its young from "sexual activity and exploitation" as explained in Jones v. State, 640 So.2d 1084 (Fla. 1994)] it is inconceivable that the key feature of this criminal statute, i.e. irrelevancy of the child's consent to sex, would nevertheless be a basis to disregard the statutorily prescribed penalty for its commission.[1]
The difficulty with this position, and the position taken by Judge Thompson in his *543 dissent, is that it confuses the legislative policy relating to the commission of the crime and its policy relating to sentencing for that crime. There is no question that a minor can consent. The legislature recognizes this but has decided that such consent shall not be a defense to the crime. But at the same time, it has provided that even though consent is not a defense, it may be considered by the court in determining an appropriate sentence.[2]
We find that a logic which holds that because consent may not be a defense, it cannot be a mitigator does not compute. A does not equal B nor is something true of A necessarily true of B. Defenses to a criminal charge and factors to be considered in mitigation are apples and oranges. Indeed, if consent were a defense to this criminal charge, there would be no need to mitigate in this instance. Although remorse is never a defense to a criminal charge, the legislature has made it a mitigating factor to be considered by the judge. Likewise, the legislature has made the willing participation of the victim a mitigating factor. And the legislature did not limit the applicability of this factor, as does the dissent, to only those victims "of age."
Even though we find that the court has the authority to mitigate based on the willing participation of a minor victim, did the court err in this case by doing so? Even if the court finds that a mitigating factor exists, it is still within the judge's discretion whether the guideline sentence should be reduced. Section 921.002(3), Florida Statutes, provides: "A court may impose a departure below the permissible sentencing range based upon circumstances or factors that reasonably justify the mitigating of the sentence in accordance with s. 921.0026." Thus, when we are asked to review a downward departure, there are two questions that we must consider. First, is there record support that the mitigating factor is actually present? Second, even if the mitigating factor is present, did the judge abuse his or her discretion in departing downward?
In this case, there is ample support that in fact the young woman willingly participated in this sexual endeavor. Hence, the record supports the presence of this mitigating factor. Because of the sordid testimony more particularly described in the dissent, perhaps the closer question is whether the court abused its discretion in mitigating even though the mitigating factor is present. The jury, being instructed to ignore the minor's consent, convicted him of the offenses. Sentencing, however, is a different matter and involves the judge's view of the evidence as it relates to mitigation. It is clear that the judge did not believe the young woman so immature that she could not agree to the encounter or that she was incapable of loving the defendant. The judge saw the minor, heard her testify and observed her demeanor, and was free to determine for herself the maturity (emotional and otherwise) of the young woman. We are not in that position. Further, insofar as it involves sentencing, the court was free to believe such witnesses and such testimony, or portion thereof, that she found credible. She might not have believed all of the "facts" set out in Judge Thompson's dissent.
It is important to note that this is not a case in which the judge trivialized the offense by a slap on the wrist. The defendant was sentenced to eight and one-half years in prison to be followed by ten years *544 probation. The judge took this case seriously. She merely realized that had the victim not willingly participated, the offense would have been much more serious and a greater sentence would be justified. In order to recognize this difference, the judge believed that a substantial, but somewhat less than guideline, sentence would be appropriate in this case. The legislature permitted her to do so.
Compare this case with State v. Smith. We agree with the result of Smith, not because the court lacked the authority to downward depart, but because we do not believe that the act of a thirteen-year-old girl who gave in to the urging of the defendant (because of her infatuation with the defendant) to have unwanted sexual relations with others constituted "willing participation." The fact that she permitted, upon the urging of her "boyfriend," that an act that she considered most loathsome be committed on her by others is not the kind of willing participation envisioned by the legislature. Nor is it the kind of willing participation involved in this case.
Quite clearly, a young woman does not become "mature" on her eighteenth birthday. Maturity is an evolving process. The court must consider the age and maturity of the victim when considering the willingness of her action and the consequence of that willingness. That is not to say that a young victim cannot willingly participate (suppose two children of about the same age "play doctor"); but it does mean that a court must consider the circumstances even more carefully depending on the victim's age.
We also agree with the result reached in State v. Johns, 576 So.2d 1332 (Fla. 5th DCA 1991). We are not convinced that the record supports the trial court's finding that the fifteen-year-old prostitute willingly participated in sex with the police officer defendant. The young girl's participation was more in the nature of a recognized "cost of doing business" than a consensual sex act. Not resisting is not the same as willingly participating. Wouldn't it have been different had the same fifteen-year-old girl had a sexual relationship with an older neighbor after he had taken her to dinner and a movie? But even in that case, the younger and less mature the victim, the less likelihood of a finding that even willing participation is sufficient for mitigating. Here, the judge was dealing with a physically mature young woman whom she believed had the capacity to and did willingly participate in the sexual relationship involved herein because of her love for the defendant. Even though as trial judges we might have sentenced differently, we do not believe that the trial judge herein abused her discretion.
We now adopt as the law of the case our dictum in State v. Johns:
Although the victim's consent and lack of chastity are not defenses to the defendant's crime, no statute says that these factors cannot be considered by a trial judge in imposing a downward sentence. Such facts may, in proper circumstances, be taken into consideration in imposing a downward departure.
And we agree with the point made in Judge Hall's dissent in State v. Sorakrai, 543 So.2d 294, 296 (Fla. 2d DCA 1989): "It may be that, under the law of Florida, such facts (the fact that the defendant believed the victim to be of lawful age) are more appropriate as mitigating factors for consideration at the sentencing phase."
AFFIRMED.
W. SHARP, GOSHORN and PETERSON, JJ., concur.
COBB, J., concurs and concurs specially, with opinion, in which GOSHORN, J., concurs.
GRIFFIN, C.J., dissents, with opinion.
DAUKSCH, J., dissents with opinion, in which ANTOON, J., concurs.
THOMPSON, J., dissents, with opinion in which GRIFFIN, C.J., concurs.
*545 COBB, J., concurring specially.
Given the facts of this case, it is a sore temptation to fault the exercise of the trial court's discretion and concur with the result reached by Judge Thompson in his dissent. I cannot agree, however, with his legal conclusion that a trial court can never use as a mitigator a factor that is statutorily prohibited as a defense. As Judge Harris aptly observes, that conclusion mixes apples with oranges. It also repudiates, sub silentio, the clear statutory language of section 921.0016(4)(f), Florida Statutes, which lists, among the mitigating circumstances a sentencing court may consider, the fact that the victim was a willing participant in the incident.
Our opinion in State v. Smith, 668 So.2d 639 (Fla. 5th DCA 1996), which perhaps arrived via the "tipsy coachman" route[1] at a correct result, was based on an unsound legal premisei.e., in a prosecution pursuant to section 800.04, Florida Statutes, a victim's willing participation can never be a proper sentencing consideration by the trial court irrespective of the facts of the case. Accordingly, I concur with the majority opinion.
GOSHORN, J., concurs.
GRIFFIN, C.J., dissenting.
As the author of the now orphaned State v. Smith, 668 So.2d 639 (Fla. 5th DCA 1996), I write in support of it. First, it is important to consider the statutory context. The offense in Smith was committed before the effective date of the statute relied on by the majority which first authorized a downward departure where the victim was an "initiator, willing participant, aggressor or provoker of the incident." § 921.0016(4)(f), Fla. Stat. (1993). Smith did not involve a statutory departure ground and did not, therefore, directly address the position taken by the majority. The view expressed in Smith, however, is even more apt in light of the statute.
The majority enjoys its little joke that the dissenters cannot distinguish between apples and orangesthe difference between the elimination of a defense to a crime and a justification for mitigation of a guidelines sentence after conviction of the crime. The Smith panel understood this distinction. Clearly, a factor that is no defense to conviction of a crime can be a factor warranting downward departure. The question after enactment of the statutory grounds for downward departure is: What was the intention of the legislature? Did section 794.001(8)(b) merely eliminate a defense or was it intended to be an expression by the legislature that a child cannot, in law, "consent" to a sexual battery by an adult in a position of familial or custodial authority? In the context of section 921.0016, the question is exactly what "willing participant" means. Did the same legislature that enacted section 794.001(8)(b) eliminating the "willingness" of the minor victim as a defense intend to include children in the enumeration of "initiator, willing participant, aggressor or provoker of the incident" as contained in section 921.0016(4)(f)?
A common sense reading of this downward departure ground, and, even more, the doctrine of ejusdem generis, shows that the legislature's creation of this downward departure ground does not apply to this offense. This general downward departure ground is meant for the myriad other types of crimes where the law recognizes the victim's capacity to initiate, participate willingly, be the aggressor or the provoker. As the high court has made clear, however, our legislature has established an overarching statutory policy when it comes to sex acts involving children. Until they are eighteen, for their own protection, they are deemed to be incapable of initiating, willingly participating, being the aggressor or the provoker of a sex act performed on them. In J.A.S. v. *546 State, 705 So.2d 1381, 1383-85 (Fla. 1998), the court recently observed:
[T]he legislature ha[s] enacted numerous statutes to protect minors from harmful sexual conduct, and ... those laws clearly invoke a policy that "any type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents ... [therefore] society has a compelling interest in intervening to stop such misconduct." Emphasizing the primacy of the child protection policies implicit in the laws, we determined that "neither the level of intimacy nor the degree of harm are relevant when an adult and a child under the age of sixteen engage in sexual intercourse." We noted that neither the child's maturity or lack of chastity could override these concerns because "sexual activity with a child opens the door to sexual exploitation, physical harm, and sometimes psychological damage." We also refused to extend a minor's privacy rights involving abortion as confirmed in In re T.W., 551 So.2d 1186 (Fla. 1989), to include a right to initiate consensual sexual relationships with adults. We noted that "T.W. did not transform a minor into an adult for all purposes." Finally, we concluded that whatever the extent of a minor's privacy rights, those rights "do not vitiate the legislature's efforts and authority to protect [minors] from conduct of others." ... [Justice Kogan] opined that "sex in early adolescence is a dangerous folly that the state clearly does not condone; but once a girl is pregnant, very different issues and dangers of a completely different magnitude arise. T.W., in sum, does not create a right for young adolescents to `consent' to sex." Justice Kogan also feared that "an uncritical acceptance of the notion of youths `consenting' to sexual activity will merely create a convenient smoke screen for a predatory exploitation of children and young adolescents." As evidence of the genuineness of these concerns, Justice Kogan cited copious social science research detailing the resulting psychological costs to the exploited individual, and the increase in criminal activity connected to the childhood sexual abuse of the perpetrators, thereby affecting society as a whole.
We recognized in Jones that the Florida Legislature, "[a]s evidenced by the number and breadth of the statutes concerning minors and sexual exploitation... has established an unquestionably strong policy interest in protecting minors from harmful sexual conduct." Moreover, "[the] rights of privacy that have been granted to minors do not vitiate the legislature's efforts and authority to protect [them] from conduct of others." Although applied in the adult-minor context, our reasoning in Jones is equally applicable here in recognizing the State's compelling interest in protecting twelve-year-olds from older teenagers and from their own immaturity in choosing to participate in harmful activity. 640 So.2d at 1087(finding that the State "has an obligation and a compelling interest in protecting children from `sexual activity and exploitation before their minds and bodies have sufficiently matured to make it appropriate, safe, and healthy for them'"). (citations omitted).
Given this clearly expressed policy of the legislature and the high court's recognition of the state's compelling interest, the notion that a minor's consent to sex with an adult in familial or custodial authority can be "willing participation" for any purpose is, to me, impossible. In Florida, a child cannot be a "willing" participant in a sex act performed on them by an adult in familial or custodial authority.
There are a number of practical problems with the majority's interpretation of the statute. First of all, assuming a child can "willingly participate" in a sex act with an adult in familial or custodial authority, if the lower court finds the "willing participant" statutory factor to be present and there is any evidence to support it, the *547 lower court has the absolute right to exercise its downward departure discretion and there is nothing an appellate court can do. The majority candidly acknowledges this. Further, once one of these factors is found to be supported by any evidence, the extent of the downward departure is infinite. This case, however, is a sad example of the result of such an analysis. If the child in the miserable circumstances of this case can be said to have exercised free will to engage in sex, then any child who fails to say "no" is less protected under this statute than the legislature plainly intended. And how do we recognize what is "willing participation" by a child in a sex act with an adult in familial or custodial authority? The question Judge Dauksch's dissent raises is what does "consent" or "willing participation" by a dependent child consist of? If a child in such circumstances believes him or herself to be "in love," what does that mean? The majority's analysis also cannot make a distinction based on age or maturity. Here the victim was seventeen but had the maturity level of a ten or eleven-year-old. What about a child of sixteen, fifteen, fourteen or less?
Furthermore, since all of the categories in this statutory ground for departure would be equally available to a defendant if the "willing participation" identified in the statute is a ground for departure for this type of sex crime perpetrated on a child, then so too is "initiator," "aggressor," or "provoker." The notion that a child's "provocation" of a sex act by an adult could warrant a (potentially infinite) downward departure from the prescribed penalty is absurd. This would mean that if a court found a child had provoked the adult to perform a sex act, the penalty could be virtually none. Reading section 921.0016(4)(f) in light of section 794.001(g)(b) demonstrates that the legislature did not intend "initiator," "willing participant," "aggressor," or "provoker" to include child victims of sex acts performed on them by adults in a position of familial or custodial authority.
Finally, based on the numbers of these cases I have reviewed, the vast majority will now include a "willing participation" downward departure ground. Presumably, we can keep this sentencing issue from infecting the issues at trial but there is no doubt that the sentencing phase will turn into a mini-trial of the victim and whether he or she said or did enough to qualify as an "unwilling" participant. I hope the legislature fixes this loophole before the majority's obdurate reading of the statute does further damage to child victims of this horrible crime. I would reverse.
DAUKSCH, J., dissenting.
It is clear to me that a sentencing court does have the discretion to depart downwards in cases such as this, as held in the majority and Judge Cobb's concurrence. In this case that discretion was abused, as the facts of the crime clearly demonstrate. In my view, this girl neither consented, as the law views consent, now willingly participated. She was forced to barter for her life with the only thing the appellee would accept in trade. For that he should pay the full price in prison. I would reverse for a guideline sentence.
ANTOON, J., concurs.
THOMPSON, J., dissenting, with opinion.
Judge Harris considers the issue before us to be "whether the willing participation of a seventeen-years-old young woman in a statutorily prohibited sexual relationship, although not a defense to a crime, can be considered by the judge in determining the appropriate sentence." I think the more precise question before us is whether willing participation, that is, consent, can be used as a mitigating factor for a downward departure from the sentencing guidelines when an adult is charged with a violation of section 794.011(8)(b), Florida Statutes *548 (1995).[1] Because I do not believe it can, I respectfully dissent.
First, this statute, section 794.011(8)(b), and others like it are designed to further the state's compelling interest in protecting minors from sexual exploitation and sexual abuse from adults. See generally, Jones v. State, 640 So.2d 1084 (Fla.1994) (Kogan, J. concurring); Schmitt v. State, 590 So.2d 404 (Fla.1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992); State v. Sorakrai, 543 So.2d 294 (Fla. 2d DCA 1989). Unlike the others, however, this statute is specifically directed toward defendants who are "in a position of familial or custodial authority." State v. Whiting, 711 So.2d 1212 (Fla. 2d DCA 1998). This is not a statute that could apply to star-crossed lovers who engage in consensual sex, and who are close in age. See e.g., B.B. v. State, 659 So.2d 256 (Fla.1995). Here, the statute seeks to penalize an adult who preys upon children, and who takes advantage of his or her status to exploit children. The trial court, therefore, should not be able to use as a mitigator that which is statutorily prohibited as a defense at trial. To do so eviscerates the statute and subverts its underlying public policy. See Whiting; State v. Smith, 668 So.2d 639 (Fla. 5th DCA 1996).
Second, I think the two departure reasons given by the trial judge are not supported by the evidence. First, the trial judge wrote that "[t]he victim, although a minor, was a willing participant in the incident." This tracks the language of the statutory mitigator, section 921.016(4)(f), which reads, "The victim was an initiator, willing participant, aggressor, or provoker of the incident." Assuming arguendo that the trial court could, in a case like this, consider as a mitigator, the victim's willing participation, the facts in this case are so egregious that a downward departure is utterly inappropriate. Second, the trial court wrote that "[t]his crime was committed in unsophisticate [sic] manner and was an isolated incident for which the defendant has shown remorse." This tracks the language of another statutory mitigator, section 921.0016(4)(j), which reads: "The offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse." This departure finding is also not supported by the record. The record reveals that Rife was 49 years old at the time he started his relationship with the minor victim, who was then 16. She showed up at Rife's home after she had been "kicked out" of her home by her mother. The minor's mother had asked her to leave home because the minor reported to police that her father had been having sexual relations with her for several years. Rife was known as a kindly man who had offered his home to others when they were in trouble. The minor had sexual relations with Rife before she moved into his home. During the first six months after she moved in with Rife, she testified, they initially had sex every night which dwindled down to sex every other night the last three months of the relationship.
Eventually, Rife was arrested and charged with five counts of sexual battery on a minor by a person in custodial authority. He was found guilty of three counts. During his trial, the minor testified that she and Rife had sex at least 60 times before he was appointed her guardian and at least 30 times after he was appointed her guardian. She also stated that Rife had proposed to her and they were to be married when she turned 18. She admitted *549 introducing herself as his fiancée. Moreover, she testified that she and Rife drank beer and smoked marijuana together, and that she liked and trusted him in spite of his overbearing behavior: he would not allow her to talk with her male friends and would not permit her to visit with any friends unless he approved them. He also threatened her. She finally reported that he was having sex with her when she could no longer tolerate his domination, and when he would not allow her to have a kitten, which was given to her by a police officer.
Ms. Linda Ward of the Department of Health and Rehabilitative Services ("HRS") testified that HRS, which had been looking for the minor because she had run away from home and because she was a witness in her father's incest case, found her at Rife's home. After Ms. Ward removed the minor from Rife's home and placed her in HRS' custody, Rife appeared in court and requested to be her guardian. Ms. Ward interviewed Rife and asked if he were sexually involved with the minor. Rife said he was not. Rife seemed taken aback by the question and said he was trying to help the young girl because she had no support and he was just taking her under his wing to help her out. Rife then appeared before the juvenile court and asked that the child be placed in his home. In spite of Ms. Ward's objections, the court placed the child with Rife. Ms. Ward testified she objected because of the child's age and because she was living with a nonrelative, older male. She thought it was in the best interest of the child to come under the care and custody of the state, so HRS could make sure the child attended school, and received counseling and other assistance from the agency. She stated that the child had been a victim of incest from the age of eleven and needed a support system.
Ms. Linda Penley-Novick, the minor's licensed mental health counselor, testified that she had spoken to Rife about the minor before the child was placed in his custody. She stated she voiced her concerns to Rife about the minor living with him because of the opportunity for sexual relations. He acted offended and said he only wanted to help. She said that she made it clear that she would report him if he had sexual relations with the child. She also recommended to the juvenile court that the child not live with Rife because she felt the child could be exploited because of a need for a place to stay and someone to care for her. She told Rife that although the minor was physically mature and knew a great deal about sex, she had the emotional maturity of a 10 or 11 year-old and, therefore, could not give consent to sex. Also, the minor came from a dysfunctional family and was especially vulnerable to an adult father figure. Penley-Novick testified that she told Rife that the child did not have good judgment about sex; that she had been damaged starting at age eleven and continued to be damaged. She emphasized that, because of the child's background, she did not have the ability to give consent to sex because "she was neither legally or emotionally developmentally able to do that." In spite of this information, Rife continued to have sex with the minor. When Ms. Penley-Novick learned of their illicit relationship, she immediately notified HRS.
The state offered Rife's videotaped statement. In the statement, he called the minor a "nympho," and an "exhibitionist," and stated that she loved sex and that he performed oral sex on her. He also testified that he and his roommate had engaged in sex with the minor at the same time and that he and the minor had used handcuffs during sex. He testified that she drank beer with him. He admitted that he had attended her father's criminal case and that he knew she had been sexually abused by her father for several years.
At the time of the sentencing, the victim was 18 and pregnant. During sentencing, several witnesses testified on Rife's behalf. The trial court heard that Rife was a veteran of the Vietnam War, that he was *550 respected at work, and that his job would be available if he were released from jail. His ex-wife testified that he was a wonderful man and she hoped that he would not be kept from his daughter for the rest of his life. His daughter testified that he was a good man. Rife's guideline score sheet provided for a state prison sentence range of 297.4 to 495.7 months. The trial court departed from the guidelines and sentenced Rife to three concurrent prison terms of 102 months (eight years and six months) followed by ten years probation. Rife was also designated a sexual predator pursuant to section 775.21, Florida Statutes (1995).
Section 921.0015(4)(f), Florida Statutes (1995), reads in part, the victim must have been "an initiator, willing participant, aggressor, or provoker of the incident." Here, the victim was abandoned by her mother and forced to care for herself because she reported her father to the police for sexually abusing her. She sought help from Rife, an adult, who himself became sexually active with her. He alleged that she initiated sexual activity with him and convinced him to become her guardian. The fact that they engaged in sexual activity speaks more to her need for emotional support and lack of resources than to her love for Rife. As Judge Harris notes, this court held in State v. Johns, 576 So.2d at 1336, that where a police officer's sexual activity with a minor was the "cost of doing business," she was not a willing participant. Here the minor's consenting to sexual activity was the result of her efforts to keep a roof over her head and food in her stomach, in addition to her emotional immaturity, and need for affection.
Further, Rife was an experienced man who had held positions of authority and trust. As noted earlier, this case does not involve two minors, or an adult who is close in age to a minor, but a 49 year old man taking advantage of a 17 year old girl who was homeless and in need of affection and the necessities of life. Rife was a sexual predator in the truest sense of the word. He sexually used and abused the minor, and provided her with alcohol and drugs in return for sexual favors. There is no clear and convincing evidence to support the departure. See State v. Mischler, 488 So.2d 523 (Fla.1986); State v. Chandler, 668 So.2d 1087 (Fla. 1st DCA 1996).
The court's second reason for departure was also baseless. The crime was not committed in an unsophisticated manner, it was not isolated, and the record does not show that Rife has shown remorse. All of these elements must be present in order for the departure to be valid. Rife became sexually active with a minor and then petitioned the circuit court to become her guardian. At the time of his petition, he did not disclose to HRS or to the court that he and the minor had a sexual relationship, or that he intended to marry her. Although he testified that it was her idea for him to petition the court to become her guardian so she would not have to be placed elsewhere, the fact is that he implemented a plan to have the court sanction and facilitate an illicit affair by placing her in his home. Even if we assume that Rife really intended to marry the minor when she became 18, this supports the conclusion that his misrepresentations to HRS and the court were part of a sophisticated plan.
The crime was not isolated. Rife argues that the crime was isolated because there was no other minor that he became sexually active with. At sentencing, he argued that section 798.011 applied to someone like a school teacher, a cub scout master, or little league coachsomeone who had access to and abused several minors. He contended that it did not apply to him since only one minor was involved. Therefore, he argued, pursuant to section 921.0016, the crime was isolated. I think not. Here, Rife had sex with the minor at least 80 times according to his own statement. The trial court believed Rife impregnated the minor as a result of this intimacy. It is fairly obvious that the mitigating statute would not encompass single *551 sexual acts with multiple minors, but I also think it would not encompass multiple acts with one minor.
Rife showed no remorse. He blamed the minor for initiating the sexual activity as well as for suggesting he become her guardian. Even though he was 50 years of age at the time he appeared in court, a decorated combat veteran, and a father, he testified the mastermind behind these crimes was a 17 year old girl. State v. Sachs, 526 So.2d 48, 51 (Fla.1988). In fact, he has failed to show even feigned remorse. See State v. Bentley, 475 So.2d 255, 255-256 (Fla. 5th DCA 1985) ("Remorsefulness is an appropriate, albeit quite easily feigned, consideration"). At no time did he apologize for his behavior, but instead consistently maintained it was the minor's fault, rather than his. Without remorse, there can be no mitigator pursuant to section 921.0016(4)(j). State v. Spioch, 706 So.2d 32 (Fla. 5th DCA 1998), rev. denied, 718 So.2d 171 (Fla.1998). Rife should not be allowed to avoid the statutory sentence because he contended that the minor was the sexual aggressor who caused him to lose all reasonable judgment. Blaming the victim is not remorse.
I recognize that sentencing judges should have the discretion to consider statutory as well non-statutory reasons when considering a departure sentence. Section 921.0016(2), Florida Statutes, authorizes a trial court to enter a departure sentence "when there are circumstances or factors which reasonably justify the departure. Aggravating and mitigating factors to be considered include, but are not limited to, those listed in subsections (3) and (4)." See also Fla. R.Crim. P. 3.703(30). In the instant case, the circumstances did not reasonably justify a departure. As the trial court observed at sentencing:
You are the adult here, and she is only seventeen. She has no obligation, in terms of the law, to tell you that you shouldn't do this. This is the law that is saying you shouldn't do it.
The statutory reasons invoked by the trial court to support a downward departure in this case were not supported by clear and convincing evidence. See Chandler; Mischler. The reasons for departure are clearly inadequate. See State v. Scaife, 676 So.2d 1035 (Fla. 5th DCA 1996). I would remand for sentencing within the guidelines.
GRIFFIN, C.J., concurs.

EN BANC ON MOTION TO CERTIFY
We grant the state's Motion to Certify and certify the following question:
ALTHOUGH WILLINGNESS OR CONSENT OF THE MINOR IS NOT A DEFENSE TO SEXUAL BATTERY OF A MINOR, MAY IT BE CONSIDERED BY THE COURT AS A MITIGATING FACTOR IN SENTENCING? SHOULD THE MITIGATION ALSO APPLY WHERE THE DEFENDANT WAS CONVICTED OF BEING IN A POSITION OF CUSTODIAL OR FAMILIAL AUTHORITY WITH THE VICTIM?
GRIFFIN, C.J., DAUKSCH, COBB, W. SHARP, GOSHORN, PETERSON, THOMPSON, and ANTOON, JJ., concur.
NOTES
[1] This position was also adopted by State v. Whiting, 711 So.2d 1212 (Fla. 2d DCA 1998).
[2] Unless the legislature acts in an unconstitutional manner, courts must permit the legislature to legislate. And unless the legislation is vague, the courts must apply the law as enacted by the legislature. Judge Thompson holds that there can be no mitigation of sentence under section 794.011(8)(b), Florida Statutes, because to do so would subvert the State's public policy of protecting minors. All criminal statutes are intended to further some public policy. The legislature is quite capable of enacting minimum and mandatory sentences. Had it intended no mitigation under this statute, the legislature could easily have said so. It did not and this court should not.
[1] See Carraway v. Armour & Company, 156 So.2d 494 (Fla.1963); Holland v. Holland, 458 So.2d 81, 85 (Fla. 5th DCA 1984) (Cowart, J., dissenting, n. 3).
[1] Section 794.001(8)(b) reads in pertinent part:

(8) Without regard to the willingness or consent of the victim, which is not a defense to prosecution under this subsection, a person who is in a position of familial or custodial authority to a person less than 18 years of age and who:
* * *
(b) Engages in any act with that person while the person is 12 years of age or older but less than 18 years of age which constitutes sexual battery ... commits a felony of the first degree....